TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

# COMMONWEALTH OF MASSACHUSETTS

................ MIDDLESEX ................ , ss



SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 09-3511

ELIZABETH MANNING, et al., Plaintiff(s)

v.

BOSTON MEDICAL CENTER CORPORATION, Defendant(s)
et al.

*A TRUE COPY ATTEST
DAVID D. BAYLES, PROCESS SERVER
AND DISINTERESTED PERSON*

## SUMMONS

To the above-named Defendant: **Boston Medical Center Corp.**

You are hereby summoned and required to serve upon ...... **Jody L. Newman of**

**Dwyer & Collora, LLP** ............... plaintiff's attorney, whose address is .... **600 Atlantic Avenue,**

**12th Floor, Boston, MA 02210** ..................., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at ... **200 Trade Center**

**Woburn, MA 01801** ................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at ............ **Woburn, MA** ................

the ................ **15th** ................ day of ...... **September**

................, in the year of our Lord ... **2009** ................ .

................................................ Clerk

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

**PROOF OF SERVICE OF PROCESS**

I hereby certify and return that on ....................................................................................................
20........., I served a copy of the within summons, together with a copy of the complaint in this action,
upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

..........................................................................................................................................................
..........................................................................................................................................................
..........................................................................................................................................................
................................................................................................................

Dated: ...................................................................................................., 20..........

**N.B.  TO PROCESS SERVER:**
   **PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX
   ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

( _____ )
( ...................... 9/17, 20.09 )
( _____ )

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX ........, ss.

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No.  09-3511

Elizabeth Manning, et al. ........, Plff.

v.

........Boston Medical Center, et al.Deft.

SUMMONS
(Mass. R. Civ. P. 4)

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. _____

09-3541

ELIZABETH MANNING, LISA RIVERS AND
RHONDA WILLIAMS, *on behalf of themselves
and all other employees similarly situated,*

                                 *Plaintiffs,*

    v.

BOSTON MEDICAL CENTER
CORPORATION, BOSTON REGIONAL
MEDICAL CENTER, LLC, BOSTON
REGIONAL MEDICAL CENTER, INC.,
ELAINE ULLIAN AND JAMES CANAVAN

                                 *Defendants.*



```
9476A000009/10/09CIVIL        720.00
9476A000009/10/09SURCHARGE     15.00
9476A000009/10/09SECC          20.00
```

## CLASS ACTION COMPLAINT

1.     This is a proceeding for injunctive and declaratory relief and monetary damages to redress the deprivation of rights secured to Plaintiffs Elizabeth Manning, Lisa Rivers and Rhonda Williams individually, as well as all other employees similarly situated, under the common law and various laws of Massachusetts including, but not limited to, Mass. Gen. Laws Ch. 149 §§ 148, 150; Mass. Gen. Law Ch. 151 §§ 1A, 1B, that require an employer to pay employees for all hours worked including premium pay when applicable.

### PARTIES

**A.    Defendants**

2.     Collectively, defendants Boston Medical Center Corporation, Boston Regional Medical Center, LLC, Boston Regional Medical Center, Inc., Elaine Ullian, and James Canavan (collectively, "Named Defendants") are related organizations through, for example, common

membership, governing bodies, trustees and/or officers.

3.    Boston Medical Center is an enterprise engaged in the operation of a hospital and/or the care of the sick and is a healthcare consortium.

4.    Named Defendants operate one health care facility or center and employ approximately 4,000 individuals.

5.    Named Defendants' health care facilities and centers include Boston Medical Center ("Health Center").

6.    Named Defendants' affiliated health care facilities and centers include the following: Boston Medical Center Charity Fund Committee, Inc., Boston Medical Center Corporation, Boston Medical Center Faculty Associates, Inc., Boston Medical Center Health Plan, Inc., Boston Regional Medical Center, LLC, Boston Regional Medical Center, Inc., Boston University Medical Center Anesthesiologists, Inc., Boston University Medical Center Radiologists, Inc., Boston University Medical Center Urologists, Inc., Charity Fund Committee, Inc. of the Boston Medical Center, East Boston Medical Center Trust, Friends of Boston Medical Center, Inc., Medical Center of Boston International Lim. Part. (Consent), Medical Center of Boston International, Inc., Medical Center of Boston Limited Partnership and Medical Center Pharmacy of Boston, Inc.. (collectively, "Affiliates").

7.    Together the Named Defendants, the Health Center and the Affiliates are referred to as "BMC" or "defendants."

8.    Further, upon information and belief, defendants' integrated labor relations and human resources are centrally organized and controlled, including defendants' employment of a senior human resources director as part of the executive management team as well as the maintenance of system-wide policies and certain employee benefit plans.

-2-

9. Upon information and belief, defendants share common management, including oversight and management by a executive management team and Board of Trustees which controls all of BMC's operations.

10. Defendants constitute an integrated, comprehensive, consolidated health care delivery system, offering a wide range of services which are controlled by BMC.

11. Defendants have centralized healthcare quality and safety programs, supply chain management, financial, computer, payroll and health records systems that are integrated throughout their locations.

12. Upon information and belief, defendants have common ownership and financial control.

13. As such, defendants are the employer (single, joint or otherwise) of the Plaintiffs and Class Members and/or alter egos of each other.

14. Elaine Ullian is the President and CEO of BMC.

15. Upon information and belief, including defendants' admissions, Ms. Ullian's responsibilities include actively managing BMC.

16. Upon information and belief, Ms. Ullian has the authority to, and does, make decisions that concern the policies defendants adopt and the implementation of those policies.

17. Upon information and belief, Ms. Ullian has the authority to, and does, make decisions that concern defendants' operations, including functions related to employment, human resources, training, payroll, and benefits.

18. Upon information and belief, due in part to her role as President and Chief Executive Officer, Ms. Ullian is actively involved in the creation of the illegal policies complained of in this case.

19.    Upon information and belief, due in part to her role as President and Chief Executive Officer, Ms. Ullian actively advises defendants' agents on the enforcement of the illegal policies complained of in this case.

20.    Upon information and belief, due in part to her role as President and Chief Executive Officer, Ms. Ullian actively ensures defendants' compliance or non-compliance with Massachusetts law including the requirements of Mass. Gen. Law Ch. 149 §§ 148, 150 and Mass. Gen. Law Ch. 151 §§ 1A, 1B.

21.    Upon information and belief, Ms. Ullian has the authority to, and does, make decisions that concern the reviewing and counseling of defendants regarding employment decisions, including hiring and firing of Plaintiffs and Class Members.

22.    Upon information and belief, Ms. Ullian has the authority to, and does, make decisions that concern employees' schedules, hours and standard benefit levels.

23.    Upon information and belief, Ms. Ullian has the authority to, and does, make decisions that concern standard pay scales.

24.    Upon information and belief, Ms. Ullian has the authority to, and does, make decisions that concern defendants' human resources policies, the resolution of issues and disputes regarding policies and their applications, the counsel locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

25.    Upon information and belief, Ms. Ullian has the authority to, and does, make decisions that concern defendants' employment and human resources records, including the systems for keeping and maintaining those records.

26.    Upon information and belief, Ms. Ullian has the authority to, and does, make

decisions that concern training and education functions across BMC.

27.     Upon information and belief, Ms. Ullian has the authority to, and does, make decisions that concern the type and scope of training employees must attend as well as any compensation they receive for attending training.

28.     Upon information and belief, Ms. Ullian has the authority to, and does, make decisions that concern payroll functions across BMC.

29.     Upon information and belief, Ms. Ullian has the authority to, and does, make decisions that concern the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

30.     Because Ms. Ullian has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of Plaintiffs and Class Members, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Ms. Ullian has the power to hire and fire employees.

31.     Because Ms. Ullian has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Ms. Ullian supervises and controls employees' work schedules and/or conditions of employment.

32.     Because Ms. Ullian has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of

payroll information, and the timing of payment, Ms. Ullian determines the rate and method of employees' payment.

33.    Because Ms. Ullian has authority with respect to defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Ms. Ullian maintains employees' employment records.

34.    Because Ms. Ullian provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, she is affirmatively, directly, and actively involved in operations of the defendants' business functions, particularly in regards to the employment of Plaintiffs.

35.    Because Ms. Ullian is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with Massachusetts law including requirements of Mass. Gen. Law Ch. 149 §§ 148, 150 and Mass. Gen. Law Ch. 151 §§ 1A, 1B, she actively participates in the violations complained of in this action.

36.    Based upon the foregoing, Ms. Ullian is liable to Plaintiffs because of her active role in operating the business, her role in the violations complained of in this action, her status as an employer, or otherwise according to Massachusetts law.

37.    James Canavan is the Senior Human Resources Director of BMC.

38.    Upon information and belief, Mr. Canavan is responsible for, provides direction

and control over, and is authorized to direct all aspects of human resources functions across BMC.

39.    Upon information and belief, due in part to his role of overseeing human resources, training and education, and payroll and commission services, Mr. Canavan is actively involved in the creation of the illegal policies complained of in this case.

40.    Upon information and belief, due in part to his role of overseeing human resources, training and education, and payroll and commission services, Mr. Canavan actively advises defendants' agents on the enforcement of the illegal policies complained of in this case.

41.    Upon information and belief, due in part to his role of overseeing human resources, training and education, and payroll and commission services, Mr. Canavan actively ensures defendants' compliance or non-compliance with Massachusetts state law including requirements of Mass. Gen. Law Ch. 149 §§ 148, 150 and Mass. Gen. Law Ch. 151 §§ 1A, 1B.

42.    Upon information and belief, Mr. Canavan is actively involved in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Plaintiffs and Class Members.

43.    Upon information and belief, Mr. Canavan is actively involved in decisions that set employees' schedules, hours and standard benefit levels.

44.    Upon information and belief, Mr. Canavan is actively involved in decisions that set standard pay scales.

45.    Upon information and belief, Mr. Canavan is actively involved in the determination and drafting of human resources policies, the resolution of issues and disputes regarding policies and their application, the counseling locations receive regarding human resources issues, and communications with employees about human resources issues and

policies.

46.    Upon information and belief, Mr. Canavan is actively involved in defendants' employment and human resources records, including the systems for keeping and maintaining those records.

47.    Upon information and belief, Mr. Canavan is actively involved in training and education functions across BMC.

48.    Upon information and belief, Mr. Canavan is actively involved in determining the type and scope of training employees must attend as well as any compensation they receive for attending training.

49.    Upon information and belief, Mr. Canavan is actively involved in payroll functions across BMC.

50.    Upon information and belief, Mr. Canavan is actively involved in the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

51.    Upon information and belief, Mr. Canavan is actively involved in benefit plans across BMC.

52.    Upon information and belief, Mr. Canavan is actively involved in determining the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

53.    Because Mr. Canavan has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of employees, and

control the drafting and enforcement of the policies which govern the hiring and firing of employees, Mr. Canavan has the power to hire and fire employees.

54.    Because Mr. Canavan has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Mr. Canavan supervises and controls employees' work schedules and/or conditions of employment.

55.    Because Mr. Canavan has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Mr. Canavan determines the rate and method of employees' payment.

56.    Because Mr. Canavan has authority with respect to defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Mr. Canavan maintains employees' employment records.

57.    Because Mr. Canavan provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, he is affirmatively, directly, and actively involved in operations of defendants' business functions, particularly in regards to the employment of Plaintiffs and Class Members.

58.   Because Mr. Canavan is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with Massachusetts law including requirements of Mass. Gen. Law Ch. 149 §§ 148, 150 and Mass. Gen. Law Ch. 151 §§ 1A, 1B, Mr. Canavan actively participates in the violations complained of in this action.

59.   Based upon the foregoing, Mr. Canavan is liable to Plaintiffs because of his active role in operating the business, his role in the violations complained of in this action, his status as an employer, or otherwise according to Massachusetts law.

**B.    Plaintiffs**

*Named Plaintiffs*

60.   Named Plaintiffs Elizabeth Manning, Lisa Rivers and Rhonda Williams ("Plaintiffs") are all residents of the Commonwealth of Massachusetts residing in the county of Suffolk.

*Class Members*

61.   The Class Members are those employees of defendants who were suffered or permitted to work by defendants and not paid for all the time they worked including applicable premium pay.

## CLASS ACTION ALLEGATIONS

62.   The claims arising under this complaint are properly maintainable as a class action under Massachusetts's Rule of Civil Procedure ("Mass. R. Civ. P.") 23.

63.   The class consists of current and former employees who worked for defendants, were paid hourly and were not paid for all the time they worked including applicable premium

pay.

64.    The class size is believed to be well over 4,000 employees.

65.    Common questions of law and fact predominate in this action because the claims of all Plaintiffs and Class Members are based on defendants' policies and practice of not properly paying employees for all hours worked including applicable premium pay in violation of the laws of Massachusetts.

66.    The named Plaintiffs will adequately represent the interests of the Class Members because they are similarly situated to the Class Members and their claims are typical of, and concurrent to, the claims of the other Class Members.

67.    There are no known conflicts of interest between the named Plaintiffs and the other Class Members.

68.    The class counsel, Dwyer & Collora, LLP and Thomas & Solomon LLP, are qualified and able to litigate the Plaintiffs' and Class Members' claims.

69.    The class counsel practice in employment litigation, and their attorneys are experienced in class action litigation, including class actions arising under state wage and hour laws.

70.    The class action is maintainable under Mass. R. Civ. P. 23 because the class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent this action, the Plaintiffs and Class Members likely will not obtain redress of their injuries and defendants will retain the proceeds of their violations of the laws of Massachusetts.

## FACTUAL BACKGROUND

71.    BMC is one of the largest health care providers in Massachusetts.

72.    As discussed below, defendants maintained several illegal pay policies that denied

-- 11 --

Plaintiffs and Class Members compensation for all hours worked.

***Meal Break Deduction Policy***

73. Pursuant to defendants' "Meal Break Deduction Policy," defendants' time-keeping system automatically deducts one half-hour from employees' paychecks each day for a meal break even though defendants fail to ensure that employees were relieved from duty for a meal break and employees did in fact perform work during those breaks and were not paid for that time.

74. Defendants maintain the Meal Break Deduction Policy throughout its facilities and centers.

75. Plaintiffs and Class Members allow defendants to operate on a 24/7 basis, and in doing so, Plaintiffs and Class Members often perform compensable work for defendants during their uncompensated meal breaks.

76. Defendants do not prohibit Plaintiffs and Class Members from working during their meal breaks and do not have rules against such work.

77. Although the defendants' policy deducts 30 minutes of pay each shift, defendants expect Plaintiffs and Class Members to be available to work throughout their shifts and consistently requires its employees to work during their unpaid meal breaks.

78. Plaintiffs and Class Members are not relieved by another employee when their break comes, or asked to leave their work location.

79. Plaintiffs and Class Members are expected to eat without any change in demands from patients or relief by additional staff.

80. Further, all defendants' employees are required to respond to pages whether on break or not, as well as requests by patients, co-workers and management.

-12-

81.    Further, defendants for years have been reducing staffing which imposes larger and larger burdens on Plaintiffs and Class Members to immediately respond to the defendants' needs regardless of whether Plaintiffs and Class Members are on a "meal break."

82.    Defendants know that Plaintiffs and Class Members perform work during their meal breaks.

83.    For example, Plaintiffs and Class Members perform the work for the defendants, on defendants' premises, in plain sight, and at management's request.

84.    Defendants' management have repeatedly observed Plaintiffs and Class Members working though their unpaid meal breaks. Defendants' management has gone so far as to direct Plaintiffs and Class Members to work during their unpaid meal breaks even though defendants' management knew that they would not be able to have a full meal break.

85.    Plaintiffs and Class Members had conversations with defendants' managers in which they discussed how they were working through their meal periods and were not getting paid for such work.

86.    When questioned by employees about the Meal Break Deduction Policy, the defendants affirmatively stated that the employees could not be paid for such time, even though defendants knew such time was compensable.

87.    Further, given the demands of the health care industry and short staffing, defendants' management knew that to get the tasks done they assigned to Plaintiffs and Class Members, when they needed to get done, Plaintiffs and Class Members had to work through their meal breaks even during times they were not paid for their meal breaks.

88.    Even though defendants know its employees are performing such work, defendants fail to compensate their employees for such work.

-13-

89.    All Plaintiffs and Class Members are subject to the Meal Break Deduction Policy and are not fully compensated for work they perform during breaks, including, without limitation, hourly employees working at BMC' facilities and centers, such as secretaries, housekeepers, custodians, clerks, porters, food service hosts, registered nurses, licensed practical nurses, nurses aides, administrative assistants, anesthetists, clinicians, medical coders, medical underwriters nurse case managers, nurse interns, nurse practitioners, practice supervisors, professional staff nurses, quality coordinators, resource pool nurses, respiratory therapists, senior research associates, operating room coordinators, surgical specialists, admissions officers, student nurse techs, trainers, transcriptionists, occupational therapists, occupational therapy assistants, physical therapists, physical therapy assistants, radiation therapists, staff therapists, angiotechnologists, x-ray technicians, CAT scan technicians, mammographers, MRI technologists, sleep technologists, surgical technologists, radiographers, phlebotomists, and other health care workers.

90.    Employees are entitled to compensation for all time they performed work for defendants, including during their meal breaks.

91.    In addition, if Plaintiffs' and Class Members' hours had been properly calculated, the time spent working during meal breaks often would include work that should have been calculated at applicable premium rates.

92.    All Plaintiffs and Class Members subject to the Meal Break Deduction Policy are members of Subclass 1.

***Unpaid Preliminary and Postliminary Work Policy***

93.    BMC suffered or permitted Plaintiffs and Class Members to perform work before and/or after the end of their scheduled shift and failed to ensure that employees were relieved

from their duties before and/or after the end of their scheduled shift.

94.    However defendants failed to pay Plaintiffs and Class Members for all time spent performing such work as a result of defendants' policies, practices and/or time recording system (the "Unpaid Preliminary and Postliminary Work Policy").

95.    In addition, if Plaintiffs' and Class Members' hours had been properly calculated, the time spent, performing work before and/or after their shifts often would have included work that should have been calculated at applicable premium rates.

96.    All Plaintiffs and Class Members subject to the Unpaid Preliminary and Postliminary Work Policy are members of Subclass 2.

**Unpaid Training Policy**

97.    Defendants also suffered or permitted Plaintiffs and Class Members to attend compensable training programs.

98.    However, defendants fail to pay employees for all time spent attending such training sessions (the "Unpaid Training Policy").

99.    In addition, if Plaintiffs' and Class Members hours had been properly calculated, the time spent attending training often would have included work that should have been calculated at applicable premium rates.

100.    All Plaintiffs and Class Members subject to the Unpaid Training Policy are members of Subclass 3.

101.    Collectively, the Meal Break Deduction Policy, the Unpaid Preliminary and Postliminary Work Policy and the Unpaid Training Policy, are referred to herein as the "Unpaid Work Policies."

**Additional Allegations**

- 15 -

102.   Plaintiffs and Class Members were subject to defendants' time keeping policies which fail to ensure that employees are compensated for all hours worked, including pursuant to the Unpaid Work Policies.

103.   Defendants' failure to pay all wages and overtime as required by Mass. Gen. Law Ch. 149 §§ 148, 150 and Mass. Gen. Law Ch. 151 §§ 1A, 1B was in reckless disregard of Plaintiffs' and Class Members' rights.

104.   As a direct and proximate cause of defendants' failure to pay all wages and overtime as required by law, defendants violated Mass. Gen. Law Ch. 149 §§ 148, 150 and Mass. Gen. Law Ch. 151 §§ 1A, 1B, and Plaintiffs and Class Members have suffered damages.

105.   Among the relief sought, Plaintiffs seek injunctive relief to prevent BMC from continuing the illegal policies and practices perpetuated pursuant to the Unpaid Work Policies.

106.   By entering into an employment relationship, defendants and Plaintiffs and Class Members entered into a contract for employment, including implied contracts and express contracts.

107.   Defendants entered into an express contract with Plaintiffs and Class Members that was explicitly intended to order and govern the employment relationship between defendants and Plaintiffs and Class Members.

108.   This binding express contract provided that Plaintiffs and Class Members would provide services and labor to defendants in return for compensation under the provisions of the contract.

109.   This express contract provided that defendants promised to compensate Plaintiffs and Class Members for "all hours worked" during their employment period.

110.   In addition, defendants' express contract with Plaintiffs and Class Members

embodied all binding legal requirements concerning the payment of such wages to the Plaintiffs and Class Members that were in force at the time of that contract.

111.    As alleged herein, Plaintiffs and Class Members regularly worked hours both under and in excess of forty per week and were not paid for all of those hours.

112.    The defendants failed to pay for time that Plaintiffs and Class Members worked including, but not limited to, during their meal breaks, time that Plaintiffs and Class Members spent in required, job-related training, and time that Plaintiffs and Class Members spent before and after their regular work hours performing work-related tasks.

113.    Defendants have received financial gain at the expense of Plaintiffs and Class Members because they did not pay Plaintiffs and Class Members for all hours worked and Defendants kept monies owed to the Plaintiffs and Class Members.

114.    Defendants have received that financial gain under such circumstances that in equity and good conscience Defendants ought not to be allowed to profit at the expense of Plaintiffs and Class Members.

115.    Pursuant to their on-going dealings and course of conduct, Plaintiffs and Class Members agreed with defendants that, among other things, defendants would pay Plaintiffs and Class Members for all hours worked.

116.    Specifically, defendants contracted to hire Plaintiffs and Class Members at a set rate of pay, with a set work schedule for a particular position, under set terms of employment.

117.    In addition, defendants implied contract with Plaintiffs and Class Members embodied all binding legal requirements concerning the payment of such wages to Plaintiffs and Class Members that were in force at the time of that contract.

118.    Defendants failed to compensate Plaintiffs and Class Members in compliance with

this implied contract by failing to compensate Plaintiffs and Class Members for time that they worked, including pursuant to the Unpaid Work Policies.

119. Each such contract also included an implied or express term that defendants agreed to fulfill all of their obligations pursuant to applicable Massachusetts law, including payment for all time worked including applicable premium pay.

120. Defendants failed to act in good faith and breached the express and/or implied contract terms by failing to pay Class Members for all of the time Class Members worked and by failing to pay Class Members all time worked including applicable premium pay. As a result of defendants' breach of express and implied contracts, Plaintiffs and Class Members have been harmed and as a direct and proximate result have suffered damages including all amounts they should have been paid for all time worked including applicable premium pay.

121. The contracts between Plaintiffs/Class Members and defendants contained an implied covenant of good faith and fair dealing, which obligated defendants to perform the terms and conditions of the employment contract fairly and in good faith and to refrain from doing any act that would violate any state law governing the employment relationship or any act that would deprive Class Members of the benefits of the contract.

122. Defendants breached their duty of good faith and fair dealing by failing to compensate Plaintiffs and Class Members in accordance with the applicable Massachusetts laws for all the time worked, including applicable premium pay.

123. As a result of defendants' breach of duty of good faith and fair dealing, Plaintiffs and Class Members have been harmed and as a direct and proximate result have suffered damages including all amounts they should have been paid for all the time worked, including applicable premium pay.

124.  Defendants made clear, definite promises to Plaintiffs and Class Members that they would be paid for all hours worked including applicable premium pay in accordance with the applicable Massachusetts laws.

125.  Defendants made these promises with the clear understanding that Plaintiffs and Class Members were seeking employment and therefore were seeking assurances that they would be paid for all hours worked.  Plaintiffs and Class Members relied on this promise.  Without such a promise of being paid for all hours worked, Plaintiffs and Class Members would not have worked for BMC.

126.  Plaintiffs and Class Members acted to their substantial detriment in reasonable reliance on defendants' promise to pay them for wages and benefits earned.  Injustice can only be avoided only if this Court mandates that defendants pay its employees for all hours worked.

127.  At all relevant times, defendants had and continued to have a legal obligation to pay Plaintiffs and Class Members all earnings and overtime due.  The wages belong to Plaintiffs and Class Members as of the time the labor and services were provided to defendants and, accordingly, the wages for services performed are the property of the Plaintiffs and Class Members.

128.  In refusing to pay wages and applicable premium pay to Plaintiffs and Class Members, defendants knowingly, unlawfully and intentionally took, appropriated and converted the wages and overtime earned by Plaintiffs and Class Members for defendants' own use, purpose and benefit.  At the time the conversion took place, Plaintiffs and Class Members were entitled to immediate possession of the amount of wages and overtime earned.  As a result, Plaintiffs and Class Members have been denied the use and enjoyment of their property and have been otherwise damaged in an amount to be proven at trial.  This conversion was done in bad

-19-

faith, oppressive, malicious, and fraudulent and/or done with conscious disregard of the rights of the Plaintiffs and Class Members. This conversion was concealed from Plaintiffs and Class Members.

129. Defendants failure to compensate Plaintiffs and Class Members for all the time they worked, including applicable premium pay, constitutes the conversion of the monies of Plaintiffs and the Class Members.

130. As a direct and proximate result of the conversion by defendants of monies belonging to Plaintiffs and Class Members, Plaintiffs and Class Members have suffered damages including all amounts they should have been paid at regular or premium rates for time worked.

131. Plaintiffs and Class Members conferred a measurable benefit upon defendants by working on defendants' behalf without receiving compensation, including premium overtime compensation.

132. As detailed herein, rather than incur additional labor costs by paying non-exempt hourly-paid employees for all of the hours that they worked, defendants accepted the services provided by Plaintiffs and Class Members and required Plaintiffs and Class Members to work hours under and in excess of forty without receiving any compensation for those hours. Plaintiffs and Class Members provided their services with the reasonable expectation of receiving compensation from the defendants.

133. Defendants failed to compensate Plaintiffs and Class Members for all hours worked, pursuant to the Unpaid Work Policies.

134. Defendants had an appreciation or knowledge of the benefit conferred by these Plaintiffs and Class Members. For example, defendants' management has: observed Plaintiffs and Class Members working through their unpaid meal breaks, directed Plaintiffs and Class

Members to work during their unpaid meal breaks, and affirmatively told Plaintiffs and Class Members that they could not be paid for such time.

135.   Defendants have received financial gain at the expense of Plaintiffs and Class Members because they did not pay Plaintiffs and Class Members for all hours worked and defendants kept the monies and benefits owed to the Plaintiffs and Class Members.

136.   Defendants have received that financial gain under such circumstances that, in equity and good conscience, defendants ought not to be allowed to profit and retain the benefits without payment of its value.

137.   Defendants enjoyed the benefit of the monies rightfully belonging to the Plaintiffs and Class Members at the expense of the Plaintiffs and Class Members.

138.   Defendants failed to act in good faith by failing to pay for all the hours worked including applicable premium pay, which has unjustly enriched defendants to the detriment of Plaintiffs and Class Members.

139.   Defendants failed to act in good faith and violated their obligations by failing to pay Plaintiffs and Class Members for the reasonable value of the services performed by Plaintiffs and Class Members for defendants.

140.   As a direct and proximate result of defendants' unjust enrichment, Plaintiffs and Class Members have suffered injuries and are entitled to reimbursement, restitution and disgorgement from defendants of the benefits conferred by Plaintiffs' and the Class Members' work without compensation as required by Mass. Gen. Law Ch. 149 §§ 148, 150 and Mass. Gen. Law Ch. 151 §§ 1A, 1B and Massachusetts common law.

141.   The defendants engaged in such conduct and made statements to conceal from the Plaintiffs their rights and to frustrate the vindication of the employees' rights under

Massachusetts law.

142.    As a result, employees were unaware of their claims.

143.    Through the paystubs and payroll information it provided to employees, BMC deliberately concealed from its employees that they did not receive compensation for all compensable time and misled them into believing they were being paid properly.

144.    Plaintiffs and Class Members are under no duty to inquire of defendants that they were paid for all hours worked including applicable premium pay. As a direct and proximate cause of defendants affirmatively misleading Plaintiffs and Class Members regarding the fact that they were to be paid for all compensable time, defendants are estopped from asserting statute of limitations defenses against Plaintiffs and Class Members.

145.    Further, in the course of their business, by maintaining and propagating the illegal policies, defendants deliberately misrepresented to Plaintiffs and Class Members that they were being properly paid for compensable time, even though Plaintiffs were not receiving pay for all compensable time.

146.    Defendants, in the course of their business, through their corporate publications and through statements of their agents, represented that wages would be paid legally and in accordance with defendants' obligations pursuant to applicable Massachusetts laws. Defendants failed to exercise reasonable care in communicating to Plaintiffs and Class Members that they would be paid for all compensable time.

147.    In the course of their business, defendants misrepresented in their employee manuals and policy manuals to Plaintiffs and Class Members that they would be paid for all compensable time including those worked both under and in excess of forty in a work week.

148.    Defendants intended for Plaintiffs and Class Members to rely upon defendants

-22-

misrepresentations that they would be paid for all compensable time, including applicable premium pay.

149. Defendants, however, at all times intended to violate applicable Massachusetts laws by failing to pay Plaintiffs and Class Members for all compensable time, including applicable premium pay.

150. These misrepresentations were material to the terms of Plaintiffs' and Class Members' employment contracts (express and implied), and Plaintiffs and Class Members justifiably relied on the misrepresentations in agreeing to accept and continue employment with defendants. This reliance was reasonable, as Plaintiffs and Class Members had every right to believe that defendants would abide by their obligations pursuant to applicable Massachusetts law.

151. When defendants hired Plaintiffs and Class Members, they represented to Plaintiffs and Class Members that they would be fully compensated for all services performed.

152. Defendants affirmatively misled Plaintiffs and Class Members regarding the fact that defendants failed to pay Plaintiffs and Class Members for all compensable time.

153. Defendants induced Plaintiffs and Class Members to accept employment with defendants by misrepresenting to Plaintiffs and Class Members that they would be fully paid for all compensable time.

154. There was no reasonable basis for defendants to believe these representations because defendants had a continuing practice and policy of failing to pay their employees for all compensable time, including applicable premium pay. Defendants concealed the fact that they did not pay Plaintiffs and Class Members for all compensable time from Plaintiffs and Class Members. Plaintiffs and Class Members relied upon defendants' representations by performing

work and services for defendants. This reliance was reasonable, as Plaintiffs and Class Members had every right to believe that defendants would abide by their obligations to pay for all hours worked pursuant to the Mass. Gen. Law Ch. 149 §§ 148, 150 and Mass. Gen. Law Ch. 151 §§ 1A, 1B and common law.

155. As a direct and proximate cause of defendants' fraud and negligent misrepresentations Plaintiffs and Class Members have suffered damages because they were not compensated for all compensable time that they worked both under and in excess of forty per week.

156. Defendants also failed to make, keep and preserve true and accurate records of the hours worked by Plaintiffs and Class Members in violations of Mass. Gen. Law Ch. 151 § 15.

157. Plaintiffs and Class Members were not classified as exempt employees because hourly employees do not fall under one of the enumerated exemptions under Mass. Gen. Law Ch. 151 §§ 1A, 1B.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

158. Pursuant to the requirements as set forth in Mass. Gen. Law Ch. 149 § 150, the Office of the Attorney General has issued right-to-sue letters in order to proceed on these claims in court.

### COUNT I
### Violation of Mass. Gen. Laws Ch. 149 § 148

159. Plaintiffs re-allege the above paragraphs as if fully restated herein.

160. As a direct and proximate cause of defendants' acts, including defendants' failure to act in good faith, defendants violated Mass. Gen. Laws Ch. 149 § 148, and Plaintiffs and Class Members have suffered damages.

### COUNT II

**Failure to Pay Overtime Wages, Mass. Gen. Laws Ch. 151 §§ 1A**

161.    Plaintiffs re-allege the above paragraphs as if fully restated herein.

162.    As a direct and proximate cause of defendants' acts, including defendants failure to act in good faith, defendants violated Mass. Gen. Laws Ch. 151 § 1A, and Plaintiffs and Class Members have suffered damages.

## COUNT III
### Breach of Contract: Failure to Pay Earned Wages

163.    Plaintiffs reallege the above paragraphs as if fully restated herein.

164.    Defendants are liable to Plaintiffs and Class Members for breach of their contract.

165.    As a direct and proximate cause of defendants' breach of contract, Plaintiffs and Class Members have suffered damages.

## COUNT IV
### Breach of Contract: Failure to Provide and Pay for Missed and/or Interrupted Meal Breaks

166.    Plaintiffs reallege the above paragraphs as if fully restated herein.

167.    Defendants are liable to Plaintiffs and Class Members for breach of their contract.

168.    As a direct and proximate cause of defendants' breach of contract, Plaintiffs and Class Members have suffered damages.

## COUNT V
### Breach of Implied Contract

169.    Plaintiffs reallege the above paragraphs as if fully restated herein.

170.    Defendants are liable to Plaintiffs and Class Members for breach of implied contracts.

171.    As a direct and proximate cause of defendants' breach of implied contracts, Plaintiffs and Class Members have suffered damages.

## COUNT VI

## Money Had and Received in Assumpsit

172.    Plaintiffs reallege the above paragraphs as if fully restated herein.

173.    Defendants are liable to Plaintiffs and Class Members based on money had and received in assumpsit.

174.    As a direct and proximate cause of defendants' failure to pay Plaintiffs and Class Members for all hours worked under circumstances in equity and good conscience, Plaintiffs and Class Members have suffered damages.

## COUNT VII
### Quantum Meruit/Unjust Enrichment

175.    Plaintiffs reallege the above paragraphs as if fully restated herein.

176.    Defendants are liable to Plaintiffs and Class Members based on quantum meruit.

177.    As a direct and proximate cause of defendants' failure to pay Plaintiffs and Class Members the reasonable value of their services, including defendants' failure to act in good faith, Plaintiffs and Class Members have suffered damages.

## COUNT VIII
### Fraud

178.    Plaintiffs reallege the above paragraphs as if fully restated herein.

179.    Defendants are liable to Plaintiffs and Class Members for fraud.

180.    As a direct and proximate cause of defendants' misrepresentations Plaintiffs and Class Members have suffered damages.

## COUNT IX
### Negligent Misrepresentation

181.    Plaintiffs reallege the above paragraphs as if fully restated herein.

182.    Defendants are liable to Plaintiffs and Class Members for negligent misrepresentation.

183. As a direct and proximate cause of defendants' misrepresentations Plaintiffs and Class Members have suffered damages.

## COUNT X
### Equitable Estoppel

184. Plaintiffs reallege the above paragraphs as if fully restated herein

185. Defendants are estopped from asserting statute of limitations defenses against Plaintiffs and Class Members.

## COUNT XI
### Promissory Estoppel

186. Plaintiffs reallege the above paragraphs as if fully restated herein

187. Defendants are liable to Plaintiffs and Class Members for promissory estoppel.

188. As a direct and proximate cause of defendants' promises Plaintiffs and Class Members have suffered damages.

## COUNT XII
### Conversion

189. Plaintiffs reallege the above paragraphs as if fully restated herein.

190. Defendants are liable to Plaintiffs and Class Members for conversion.

191. As a direct and proximate result of the conversion by defendants of monies belonging to Plaintiffs and Class Members, Plaintiffs and Class Members have suffered damages.

## COUNT XIII
### Failure To Keep Accurate Records

192. Plaintiffs reallege the above paragraphs as if fully restated herein.

193. Defendants are liable to Plaintiffs and Class Members for their failure to keep accurate records.

194.    As a direct and proximate result defendants' failure to keep true and accurate record of hours worked by Plaintiffs and Class Members, Plaintiffs and Class Members have suffered damages.

**WHEREFORE**, Plaintiffs demand judgment against defendants, including an award of treble damages, plus costs of suit in their favor and that they be given the following relief:

(a)    certification of this case as a class action;

(b)    an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(c)    an award of the value of Plaintiffs' and Class Members' unpaid wages, including fringe benefits;

(d)    an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiffs' rights;

(e)    an award of pre- and post-judgment interest; and

(f)    such other and further legal or equitable relief as this Court deems to be just and appropriate.

### Jury Demand

Plaintiffs hereby request a jury trial on all issues so triable.

Dated: September 9, 2009

Respectfully submitted,
ELIZABETH MANNING, et al.,
and all others similarly situated

By their attorneys,

_____
Jody L. Newman (BBO No. 542264)
Ariatna Villegas-Vazquez (BBO No. 655249)
DWYER & COLLORA, LLP
600 Atlantic Avenue
Boston, MA  02210-2211
(617) 371-1000
jnewman@dwyercollora.com
avillegas-vazquez@dwyercollora.com

THOMAS & SOLOMON LLP
Patrick J. Solomon, Esq. (*pro hac vice admission anticipated*)
Michael J. Lingle, Esq. (*pro hac vice admission anticipated*)
693 East Avenue
Rochester, New York 14607
Telephone: (585) 272-0540
psolomon@theemploymentattorneys.com
mlingle@theemploymentattorneys.com

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                        SUPERIOR COURT DEPARTMENT

ELIZABETH MANNING, LISA RIVERS and          )
RHONDA WILLIAMS, *on behalf of themselves and all*  )
*other employees similarly situated*,               )
                                                    )
      Plaintiffs,                                  )           CIVIL ACTION NO.:
                                                    )           MICV2009-03541-A
v.                                                  )
                                                    )
BOSTON MEDICAL CENTER CORPORATION,          )
BOSTON REGIONAL MEDICAL CENTER, LLC,        )
BOSTON REGIONAL MEDICAL CENTER, INC.,       )
ELAINE ULLIAN and JAMES CANAVAN,            )
                                                    )
      Defendants.                                  )
                                                    )

### ASSENTED-TO MOTION FOR EXTENSION OF TIME
### TO ANSWER OR OTHERWISE RESPOND TO COMPLAINT

Pursuant to Massachusetts Rules of Civil Procedure 6(b), Defendants Boston Medical

Center Corp. ("BMC"), Elaine Ullian ("Ullian"), and James Canavan ("Canavan") (collectively

referred to herein as "BMC Defendants")[1] hereby move this Court for a brief extension of time,

through and including November 6, 2009, to file an answer, move or otherwise respond to

Plaintiffs' Complaint. In support of this Motion, BMC Defendants state as follows:

1.      Plaintiffs filed their Complaint on or about September 10, 2009, in Middlesex

County Superior Court, Commonwealth of Massachusetts. In twenty-nine pages and 194

numbered paragraphs of allegations, the Complaint asserts thirteen counts against the BMC

Defendants.

2.      Specifically, Plaintiffs assert claims, on behalf of themselves and others similarly

situated, alleging that BMC Defendants failed to comply with the Massachusetts Payment of

---

[1] Named Defendants Boston Regional Medical Center, LLC and Boston Regional Medical Center, Inc. are not and have never been affiliated in any manner with Boston Medical Center. This Motion does not constitute an appearance by undersigned counsel on behalf of Boston Regional Medical Center, LLC and Boston Regional Medical Center, Inc.

Wages Act, Mass. Gen. Laws ch. 149, § 148 (Count I), and the overtime provisions of the Massachusetts Fair Minimum Wage Act, Mass. Gen. laws ch. 151, § 1A (Count II). In addition, Plaintiffs assert common law claims for breach of contract (Counts III, IV, and V), assumpsit (Count VI), quantum meruit/unjust enrichment (Count VII), fraud (Count VIII), negligent misrepresentation (Count IX), equitable estoppel (Count X), promissory estoppel (Count XI), and conversion (Count XII), as well as a claim that BMC Defendants failed to keep accurate records (Count XIII).

3.    BMC, Ullian and Canavan were served with the Summons and Complaint on September 17, 2009.

4.    On September 3, 2009, Plaintiffs filed an action against BMC Defendants in the United States District Court for the District of Massachusetts in which they allege violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"), the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and assert equitable estoppel.

5.    Due to the complexity of the allegations and the nature of Plaintiffs' interwoven claims and multiple counts, BMC Defendants require additional time to review information necessary to assemble an appropriate response to the Complaint on behalf of BMC, Ullian and Canavan.

6.    In addition, BMC Defendants just recently retained undersigned counsel in this matter.

7.    Plaintiffs assent to the granting of this Motion.

2

WHEREFORE, BMC Defendants respectfully request that the Court grant this Motion, and allow them until November 6, 2009 to answer, move or otherwise respond to Plaintiffs' Complaint.

Respectfully submitted,

**BOSTON MEDICAL CENTER CORPORATION, ELAINE ULLIAN, and JAMES CANAVAN**

ASSENTED TO:

By their attorneys,

_Jody L. Newman_ CJE

Jody L. Newman, Esq. (BBO #542264)
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA 02210-2211

_CJ Eaton_

Richard L. Alfred (BBO #15000)
ralfred@seyfarth.com
Kristin G. McGurn (BBO #559687)
kmcgurn@seyfarth.com
C.J. Eaton (BBO # 660726)
ceaton@seyfarth.com
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
(617) 946-4800

Dated: October 7, 2009

---

**CERTIFICATE OF SERVICE**

I, C.J. Eaton, certify that on October 7, 2009, I served a copy of the foregoing document by first class mail, postage prepaid, to their counsel of record: Jody L. Newman, Esq., Dwyer & Collora, LLP, 600 Atlantic Avenue, Boston, MA 02210-2211 and Patrick J. Solomon, Esq., Thomas & Solomon LLP, 693 East Avenue, Rochester, NY 14607.

_CJ Eaton_

C.J. Eaton

---

BO1 16001831.2