# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELIZABETH MANNING, LISA RIVERS, and RHONDA WILLIAMS, on behalf of themselves and all other employees similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>BOSTON MEDICAL CENTER CORPORATION, BOSTON REGIONAL MEDICAL CENTER, LLC, BOSTON REGIONAL MEDICAL CENTER, INC., ELAINE ULLIAN, and JAMES CANAVAN,<br><br>               Defendants. | CIVIL ACTION NO. 09-CV-11724 NMG<br><br>**LEAVE TO FILE MEMORANDUM OF LAW IN EXCESS OF TWENTY PAGES GRANTED ON DECEMBER 11, 2009** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' STATE LAW CLAIMS

Defendants Boston Medical Center Corporation ("BMC"), Elaine Ullian, and James Canavan (collectively, "Defendants")[1] submit this Memorandum of Law in support of their Motion to Dismiss all counts of the complaint ("Complaint") by Elizabeth Manning, Lisa Rivers, and Rhonda Williams (together, "Plaintiffs"), originally filed in Massachusetts Superior Court for Middlesex County.[2]  As chronicled in a website that Plaintiffs' Counsel maintains, www.hospitalovertime.com, this lawsuit is part of a far-reaching campaign that the law firm of Thomas & Solomon LLP has launched against hospitals around the country.[3]  That campaign has included the filing of multiple cookie-cutter complaints, including ten lawsuits filed in the Massachusetts state and federal courts in early September

---

[1] Named defendants Boston Regional Medical Center, LLC and Boston Regional Medical Center, Inc. are not and have never been affiliated in any manner with Boston Medical Center.  Moreover, to the best of Defendants' knowledge, the Boston Regional Medical Center facility in Stoneham, Massachusetts, has been closed for several years.  Boston Regional Medical Center, LLC and Boston Regional Medical Center, Inc. are not represented by the undersigned counsel.

[2] Defendants' present motion to dismiss is limited to the claims in this lawsuit, which were originally asserted in the Massachusetts Superior Court and removed to this Court on October 16, 2009; it does not address the separate but related claims filed by the same plaintiffs in this Court on September 3, 2009, pending as docket no. 09-cv-11463 NMG.  Defendants' Motion to Consolidate the two cases, filed on November 4, 2009, is pending.

[3] See also their related websites: www.bostonmedicalcenterclassaction.com, (last visited Nov. 5, 2009); www.caritaschristiclassaction.com, (last visited Nov. 5, 2009); www.partnershealthcareclassaction.com, (last visited Nov. 5, 2009); www.umassmemorialclassaction.com, (last visited Nov. 5, 2009); www.caregroupclassaction.com (last visited Nov. 5, 2009).

2009, which are grounded in speculation and devoid of allegations of any specific facts.[4]  While the complaints in each case allege broadly and in prolix fashion that each of the hospital defendants defrauded employees by making them work during meal breaks and failing to pay for preliminary and postliminary work and mandatory training, they do not plead a single underlying allegation of fact.  The paucity of Plaintiffs' allegations is demonstrated by the fact that Plaintiffs' counsel has used virtually identical language to describe their claims against every one of the multiple hospitals and healthcare systems they have sued in Massachusetts and in disparate areas of the country, as well as the allegations against their respective CEOs and human resources executives.  Not content to simply allege conclusory wage and hour claims, Plaintiffs – without a whisper of additional factual basis – concoct *quantum meruit*, conversion, promissory estoppel, and other such claims, based only on the assumption that their imagined violations of wage and hour laws perforce constitute other legal wrongs.

Despite its length and numerous counts, Plaintiffs' Complaint offers nothing more than formulaic recitations of the bare elements of the causes of action they assert in place of factual allegations in support of their claims.  This alone mandates dismissal of Plaintiffs' claims.  Even if the Court is inclined to look beyond these pleading deficiencies, Plaintiffs' claims suffer additional and fatal legal flaws.  Plaintiffs' statutory claims fail because the statutes they invoke state on their face that they do not apply to employees of hospitals.  In addition, because Plaintiffs are members of collective bargaining units subject to collective bargaining agreements, their claims for breach of other nebulously described express or implied "agreements" with BMC, as well as their common law claims that require interpretation of the terms of the various collective bargaining agreements in effect at BMC, fail

---

[4] In addition to the ten nearly identical cases filed in Massachusetts, Plaintiffs' counsel has filed seven lawsuits in Pittsburgh and five lawsuits in New York. *See Taylor v. Pittsburg Mercy Health Sys.*, No. 09-006476 (Allegheny Cty. Pa., filed Apr. 2009); *Taylor v. Pittsburg Mercy Health Sys.*, No. 09-cv-0377 (W.D. Pa., filed Mar. 2009); *Camesi v. Univ. Pittsburg Med. Ctr.*, No. 09-006470 (Allegheny Cty. Pa., filed Apr. 2009); *Camesi v. Univ. Pittsburg Med. Ctr.*, No. 09-cv-0085 (W.D. Pa., filed Mar. 2009); *Kuznyetsov v. West Penn Allegheny Health Sys.*, No. 09-006480 (Allegheny Cty. Pa., filed Nov. 2008); *Kuznyetsov v. West Penn Allegheny Health Sys*., No. 09-cv-0379 (W.D. Pa., filed Mar. 2009); *Gordon v. Kaleida Health*, No. 08-CV-378 (W.D.N.Y., filed May 2008); *Hinterberger v. Catholic Health Sys., Inc.*, No. 08-CV-1221 (W.D.N.Y., filed May 2008); *Hamelin v. Faxton-St. Luke's Healthcare*, No. 08-cv-1219 (N.D.N.Y., filed Nov. 2008); *Colozzi v. St. Joseph's Hosp. Health Ctr.*, No. 08-cv-1220 (N.D.N.Y., filed Nov. 2008); *Fengler v. Crouse Health Found., Inc*., 08-cv-1221 (N.D.N.Y., filed Nov. 2008).

because federal labor law preempts such claims. Plaintiffs' derivative common law claims fail because they are preempted by state statutes. Finally, Plaintiffs' count for "equitable estoppel" asserts a cause of action that simply does not exist. Plaintiffs' Complaint fails to state a single viable claim, and thus the Court should dismiss the state law claims in their entirety.

## Background

### I.    BOSTON MEDICAL CENTER CORPORATION

BMC is a not-for-profit healthcare organization that operates Boston Medical Center, a 626-bed hospital located in the South End neighborhood of Boston. BMC was created pursuant to special enabling legislation and by the merger of public and private healthcare institutions whose mission includes caring for the city's poorest, sickest patients.[5] Plaintiffs are current and former employees of BMC who were paid on an hourly basis. In addition, Plaintiffs and almost all of the BMC employees whom they seek to represent are members of unionized bargaining units. The terms and conditions of employment of each bargaining unit is governed by a collective bargaining agreement ("CBA") between BMC and the Massachusetts Nurses Association ("MNA"); 1199SEIU United Healthcare Workers East; or the American Federation of State, County, and Municipal Employees ("AFSCME"), Council 93, AFL-CIO/CLC.[6] Each CBA covers a separate bargaining unit, throughout different facilities. The several CBAs that cover Plaintiffs are similar in all material respects.

### II.    COLLECTIVE BARGAINING AGREEMENTS

The CBAs contain comprehensive provisions governing breaks, overtime compensation, premium pay, on-call pay, shift differentials, shift assignments, fulfilling staffing needs, training, and record retention.[7] The provisions of the CBAs concerning breaks are especially significant to this case.

---

[5] *See* Chapter 147 of the Acts of 1995.

[6] The collective bargaining agreements are properly before the Court on this Motion to Dismiss because they were referred to and relied upon in Plaintiffs' Complaint. *See, e.g.*, *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

[7] The CBA between MNA and BMC is attached as Exhibit 1 to the Affidavit of C.J. Eaton (attached as Exhibit A); the CBA between 1199SEIU United Healthcare Workers East and BMC (Registered Nurses) is attached as Exhibit 2; the CBA

They contain meal break provisions and stipulate that employees "shall" be provided a fifteen-minute rest period for each eight hours of work "scheduled in accordance with the operational needs of the department or unit"[8] but recognize that, in some instances, employees may need to work during their fifteen or thirty-minute break and require payment for that time.  The collective bargaining agreements impose requirements that are more generous than the requirements of Massachusetts wage and hour law.  For example, Massachusetts wage and hour law does not require employers to pay employees overtime for working more than a certain number of hours in a day.  By contrast, provided certain conditions are met, the collective bargaining agreements require BMC to pay an employee who is regularly scheduled to work at least eight hours per day time-and-a-half if the employee works beyond his or her shift at the hospital's request.[9]  Similarly, unlike Massachusetts law, the collective bargaining agreements provide that an employee scheduled to work but sent home will receive reporting pay.[10]  Accordingly, the wage and hour thrust of Plaintiffs' case can be understood only in the context of the long-standing and robust collective bargaining at BMC.  Plaintiffs cannot litigate these claims without parsing the complex agreements that they identify in their Complaint.

---

between AFSCME/AFL-CIO/CLC and BMC (Unified Contract) is attached as Exhibit 3; the CBA between 1199SEIU United Healthcare Workers East and BMC (Skilled Maintenance) is attached as Exhibit 4; and the CBA between AFSCME/AFL-CIO/CLC and BMC (Skilled Maintenance) is attached as Exhibit 5.

[8] *See*  CBA between MNA and BMC, Art. IX, Section 4; CBA between 1199SEIU United Healthcare Workers East and BMC (Registered Nurses), Art. 9, Section 4; CBA between AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 8, Section 2; CBA between 1199SEIU United Healthcare Workers East and BMC (Skilled Maintenance), Art. VIII, Section 2; CBA between AFSCME/AFL-CIO/CLC and BMC (Skilled Maintenance), Art. VIII, Section 2.

[9] *See*  CBA between MNA and BMC, Art. XII, Section 1(b) and (c); CBA between the 1199SEIU United Healthcare Workers East and BMC (Registered Nurses), Art. 13; CBA between the AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 8, Sections 10 and 11; CBA between 1199SEIU United Healthcare Workers East and BMC (Skilled Maintenance), Art. VIII, Section 11; CBA between AFSCME/AFL-CIO/CLC (Skilled Maintenance), Art. VIII, Section 11.

[10] *See* CBA between MNA and BMC, Art. IX, Section 5, Art. XII, Section 7; CBA between the 1199SEIU United Healthcare Workers East and BMC (Registered Nurses), Art. 9, Section 5, Art. 13; CBA between the AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 8, Section 3; CBA between 1199SEIU United Healthcare Workers East and BMC (Skilled Maintenance), Art. VIII, Section 3; CBA between AFSCME/AFL-CIO/CLC (Skilled Maintenance), Art. VIII, Section 3.  Massachusetts does have a reporting pay requirement, but it exempts hospitals and other non-profit employers. *See* 455 C.M.R. § 2.03(1).

## III.    THE COMPLAINT

On September 10, 2009, Plaintiffs filed a thirteen-count complaint in Suffolk Superior Court.  In their Complaint, Plaintiffs contend that they were wrongfully deprived of remuneration in three ways.  First, they claim that BMC automatically deducted time from their total hours worked for meal breaks even when they performed work during a meal break period.  Complaint ("Compl."), ¶¶ 79-87.  Second, they claim that unnamed "policies, practices and/or [unidentified aspects of BMC's] time recording system" prevented them from recording preliminary and postliminary work performed at the start and conclusion of each shift.  Compl., ¶¶ 99-102.  Third, they claim that BMC failed to pay them for time spent attending "compensable training programs."  Plaintiffs claim that this alleged failure to pay wages constitutes a breach of unidentified promises, as well as a violation of the Massachusetts Payment of Wages Act, Mass. Gen. Laws ch. 149, § 148  (the "Wage Act") (Count I), and the overtime provisions of the Massachusetts Fair Minimum Wage Act, Mass. Gen. Laws ch. 151, § 1A ("Minimum Wage Law") (Count II).  In addition, Plaintiffs assert common law claims for breach of contract (Counts III, IV, and V), money had and received in assumpsit (Count VI), *quantum meruit*/unjust enrichment (Count VII), fraud (Count VIII), negligent misrepresentation (Count IX), equitable estoppel (Count X), promissory estoppel (Count XI), and conversion (Count XII), as well as a claim that BMC failed to keep accurate records (Count XIII).

BMC removed this action to this Court on October 16, 2009, pursuant to 28 U.S.C. §§ 1441(a), 1446, and 1331, based on the complete preemption corollary to the well-pleaded complaint rule, as Plaintiffs' state law claims are preempted by § 301 of the Labor Management Relations Act ("LMRA").  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-94 (1987); *Franchise Tax Board v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983).

## Argument

**I.    PLAINTIFFS' COMPLAINT FAILS TO ASSERT FACTS SUFFICIENT TO MEET THE APPLICABLE PLEADING STANDARDS.**

Each claim that Plaintiffs assert in their Complaint is subject to the minimal pleading standard established in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). In addition, the Plaintiffs' claims that Defendants engaged in fraud or negligent misrepresentation are subject to the heightened requirements of Rule 9 and must be pled with particularity. Despite spanning twenty-nine pages and almost 200 numbered paragraphs, Plaintiffs' Complaint is devoid of substance. Plaintiffs' allegations primarily consist of conclusory assertions that parrot the legal elements of one or more of the Complaint's thirteen counts. Such allegations fail to state any viable claim under the pleading standard established by *Twombly* and *Iqbal*, much less the requirements of Rule 9. The Court therefore should dismiss the Complaint.

### A.    Plaintiffs' Factual Allegations Are Insufficient to Lend Credibility to Their Legal Claims, as *Twombly* and *Iqbal* Require.

Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Twombly* and *Iqbal*, the Supreme Court announced and refined a new measure of a plaintiff's compliance with that requirement. In order to survive a motion to dismiss, a complaint must set forth factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. While the Court acknowledged that "detailed factual allegations" are not necessary for a complaint to survive a motion to dismiss, a complaint must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations omitted). This refined standard is intended to prevent "a plaintiff with a largely groundless claim [from] be[ing] allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Twombly*, 550 U.S. at 558 (citations and quotations omitted). In light of the Supreme Court's guidance, "two

underlying principles guide [] assessment of the adequacy of the plaintiffs' pleadings." *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009). First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and legal conclusions couched as factual allegations need not be given any credence by the court. *Id.*; *Twombly*, 550 U.S. at 555. Second, "only a complaint that states a <u>plausible</u> claim for relief survives a motion to dismiss." *Maldonado*, 568 F.3d at 268 (emphasis added).

As demonstrated below, none of Plaintiffs' thirteen counts satisfy these pleading requirements. If Plaintiffs had been subject to any identifiable legal wrong, they might have shared with the Court a few specifics about their own compensation or experiences as employees of BMC. Instead, Plaintiffs' Complaint consists of only vague references to alleged violations of statutes and common law, and is almost devoid of substantive factual allegations that would ground a plausible claim for relief. Indeed, on the same day that they filed the Complaint in this matter, Plaintiffs' counsel filed substantially identical complaints against every major hospital system in Massachusetts, not pleading facts but reciting the same litany of unadorned, boilerplate allegations in every case.[11] To paraphrase Shakespeare, Plaintiffs' allegations are full of sound and fury, but without factual background sufficient to demonstrate "more than a sheer possibility that [the] defendant has acted unlawfully," they signify nothing. *See Iqbal*, 129 S.Ct. at 1949.

### 1.    Plaintiffs Fail To Provide Sufficient Factual Support for Their Statutory Wage Claims.

Counts I and II of Plaintiffs' Complaint, which assert claims for failure to pay wages and overtime pursuant to the Wage Act and the Minimum Wage Law fail principally because BMC's

---

[11] *Pruell v. Caritas Christi,* Civil Action No. 09-CV-11722-GAO (removed from Suffolk County Superior Court on October 16, 2009); *Hamilton v. Partners Healthcare Sys.,* Civil Action No. 09-CV-11725-DPW (removed from Middlesex County Superior Court on October 16, 2009); *Cavallaro v. UMass Mem'l Healthcare Inc.,* Civil Action No. 09-CV-40181-FDS (removed from Worcester County Superior Court on October 16, 2009); and *Woolfson v. Caregroup, Inc.*, Middlesex Superior Court Civil Action No. 2009-03542. In each of these cases, Plaintiffs' counsel filed a complaint containing a nearly verbatim recitation of the same 195 numbered paragraphs against each group of defendants, including various institutions in each healthcare system, a Chief Executive Officer, and a senior human resources officer. In each case, Plaintiffs' counsel asserted the same thirteen counts that they assert against BMC in this matter.

employees are exempted from coverage of both statutes, as discussed in Part III below.  Even if

Plaintiffs were not exempted from coverage, their statutory claims would fail because Plaintiffs have

not pled any facts to lend plausibility to their hollow assertion that BMC breached its supposed

statutory obligations.

To succeed on a claim under the Wage Act (Count I), Plaintiffs must show that BMC failed to

pay for all hours worked, and to succeed under the Minimum Wage Law (Count II), Plaintiffs must

show that they worked more than forty hours per week and did not receive overtime pay.   Plaintiffs do

not allege facts to support their assertion regarding either of BMC's alleged statutory violations.

Indeed, they allege nothing regarding their employment, failing even to specifically allege that they

ever worked for BMC.  *See* Compl., ¶ 60.  They similarly fail to allege what positions they held, in

which of BMC's multiple facilities they worked, or during what time period they were employed.[12]

Most importantly, the Court is left to guess what their pay rates were and for what hours they have not

been paid.  Without such factual allegations, there is nothing to raise their complaint "above the

speculative level," as is necessary to survive a motion to dismiss under *Twombly*.

Courts applying *Twombly* in the analogous context of Fair Labor Standards Act ("FLSA") cases

have held that to substantiate violations of the statute, a complaint must "at least approximately[] allege

the hours worked for which . . . wages were not received," because "simply stating that a Plaintiff was

not paid for overtime work does not sufficiently allege a violation" of wage and hour laws.  *Zhong v.*

*August August Corp.*, 498 F. Supp. 2d 625, 628, 630 (S.D.N.Y. 2007) (quotations omitted).  For

example, an employee cannot establish a minimum wage violation simply by alleging that he was not

paid at his regular rate of pay for a number of hours.  Rather, he must allege facts that if proven would

demonstrate that as a result of that unpaid time, his effective rate of pay during some period dropped

below the statutory minimum.  *See*, *e.g.*, *Bailey v. Border Foods Inc.*, 2009 WL 3248305, at *2 (D.

---

[12] This is of particular concern because several of the purported "consent to join" forms that have been filed in the federal action (pending as docket number 09-CV-11463) are signed by individuals as to whom BMC has no record, and who thus appear never to have worked for BMC.

Minn. 2009) (granting motion to dismiss plaintiffs' state and federal minimum wage claims because they "failed to identify their hourly pay rates . . . or any facts [concerning hours worked and paid] that would permit the Court to infer that Plaintiffs actually received less than minimum wage"). Such specific allegations are particularly important here because of the remarkably broad swath of employees whom Plaintiffs seek to sweep into a putative class in this litigation.[13] Plaintiffs' suggestion that all of these employees performed some unspecified activities for an unstated amount of time for which they were not paid fails to meet the *Twombly* standard and requires dismissal.

That Plaintiffs fail to allege facts regarding their positions, compensation, and hours of work is merely exemplary of the ways in which their statutory claim fails to meet the *Twombly* standard. For example, Plaintiffs make the conclusory assertion that they were not compensated for preliminary and postliminary work, but they fail to provide any description of the uncompensated work they claim to have performed. Compl., ¶¶ 93-94. They similarly allege in conclusory fashion that they attended "compensable training programs" without specifying the nature of the training programs attended, where they occurred, the voluntariness or job-relatedness of these training programs, or any other allegation creating a plausible inference that these activities may be compensable.[14] Compl., ¶¶ 97-98. Each and every one of these allegations should be disregarded as legal conclusions "couched as [] factual allegation[s]." *Twombly*, 550 U.S. at 555. Once these conclusions are set aside, Plaintiffs' remaining assertions present no allegations of fact that would render their statutory claims for allegedly

---

[13] Plaintiffs identify more than forty positions that they claim to be at issue in this case. Compl., ¶ 89. Plaintiffs provide no basis for a contention that incumbents in all of the listed positions have performed work for which they were not paid. *See id.* Moreover, the incumbents in those positions work at multiple rates and, pursuant to the various collective bargaining agreements in effect at BMC's multiple facilities, are subject to a variety of interwoven rules concerning their rates of pay and hours of work. *See* Part II, *infra*. Thus, Plaintiffs' empty Complaint is particularly egregious where they seek to represent numerous categories of employees all of whom, so far as the Complaint pleads, enjoy different working conditions.

[14] Not all "training" is compensable work. Whether employees must be paid for training activities depends on the facts and circumstances of the particular training. *See* 29 C.F.R. §§ 785.27-785.32 (describing types of training that are compensable and types that are not).

unpaid training time and preliminary and postliminary work plausible.[15]  These claims, therefore, must

be dismissed.[16]

### 2.    Plaintiffs Fail to Substantiate Their Contract Claims.

Plaintiffs' implied and express contract claims are also unsupported with factual allegations

sufficient to meet the *Twombly* standard.  Even under the more lenient standard that preceded *Twombly*,

"to state a claim for breach of contract, a plaintiff [was required to] allege, at a minimum, that there was

a valid contract, that the defendant breached its duties under the contractual agreement, and that the

breach caused the plaintiff damage." *Moghaddam v. Dunkin' Donuts, Inc.*, 295 F. Supp. 2d 136, 139

(D. Mass. 2003) (quotations omitted).  Plaintiffs' Complaint asserts two separate claims for breach of

some unidentified express contract (Counts III and IV), as well as a claim for breach of an implied

contract (Count V).  Plaintiffs, however, do nothing to substantiate the assertion that they had any

express or implied contract with BMC, and instead merely beg the question with a conclusory

allegation that "[b]y entering into an employment relationship, defendants and Plaintiffs and Class

Members entered into a contract for employment, including implied contracts and express contracts."

Compl., ¶ 106.  Plaintiffs neglect even to specify whether the express contract they allege is oral or

written.  They make no allegations describing the circumstances under which the contract allegedly was

entered into, the parties to this agreement, who negotiated the alleged contract, or even the specific

terms they claim were breached.  Plaintiffs do not specify whether the alleged contracts are individual

---

[15] As another glaring example of Plaintiffs' failure to meet the *Twombly* pleading standard, Plaintiffs also attribute a number of statements and actions to "defendants' managers" in conclusory fashion without providing any information as to the identity of those individuals, whether they actually constitute management, or when and to whom such statements allegedly were made. *See, e.g.*, Compl., ¶ 84 ("Defendants' management have [sic] repeatedly observed Plaintiffs and Class members working through their unpaid meal breaks"); Compl., ¶ 85 ("Plaintiffs and Class Members had conversations with defendants' managers in which they discussed how they were working through their meal periods").  Plaintiffs reiterate virtually identical allegations against "managers" at each of the four other hospital systems they simultaneously sued on September 10, 2009.  *See supra*, note 11.

[16] Plaintiffs also purport to assert a claim for "failure to keep accurate records," in which they may refer to the recordkeeping requirements of Mass. Gen. Laws ch. 151, § 15.  *See* Compl., ¶ 192-94 (Count XIII).  This statutory section requires employers to produce to the Massachusetts Attorney General upon request a "record of the name, address and occupation of each employee, of the amount paid each pay period to each employee, of the hours worked each day and each week by each employee."  Section 15 provides rights to employees only to the extent it permits them to request their own records. *See id.* Plaintiffs have not alleged that they requested any records from BMC, much less that BMC failed or refused to produce them, and they have not pled a plausible claim under that statute.

agreements with BMC or some broader agreements.[17]  Likewise, Plaintiffs fail to explain the basis of

their implied contract claim.  While they assert that an implied contract arose from their "on-going

dealings and course of conduct" with BMC, Compl., ¶ 115, they entirely fail to describe that course of

dealing or conduct, omitting any account of the type of conduct, the timing of the conduct, or the

individuals who allegedly engaged in the conduct at issue.  Without any substantiation of these legal

conclusions masquerading as allegations of fact, Plaintiffs have not pled facts sufficient to give rise to a

plausible inference that a contract existed, much less that Defendants breached such an agreement.

### 3.    Plaintiffs' Fraud and Conversion Claims Fail Because They Do Not Allege the Necessary State of Mind.

Counts VIII and XII of the Complaint purport to assert claims for fraud and conversion.  In

Massachusetts, a claim for conversion "cannot be maintained without proof that the defendant . . . did

some positive wrongful act with the intention to appropriate the property to himself."  *Grande v. PFL*

*Life Ins. Co.*, 2000 WL 1476676, *4 (Mass. App. Div. 2000) (quoting *Spooner v. Manchester*, 133

Mass. 270, 273 (1882)) (emphasis added).  Similarly, in Plaintiffs' fraud claim, "intent, or state of

mind, of the defendant at the time the promises [that are the basis of the fraud claim] were made

becomes the relevant issue."  *Bolen v. Paragon Plastics, Inc.*, 754 F. Supp. 221, 226 (D. Mass. 1990).[18]

Plaintiffs offer numerous naked assertions with regard to Defendants' supposed mental state.  For

example, they allege that Defendants "at all times intended to violate applicable Massachusetts laws by

failing to pay Plaintiffs and Class Members for all compensable time."  Compl., ¶ 149.  They further

---

[17] To the extent Plaintiffs contend that the contract referred to exists separate and distinct from the various collective bargaining agreements in place at BMC's facilities, they also fail to so allege.  To the extent that Plaintiffs' contract claims do refer to such collective bargaining agreements, the claims are preempted as discussed in Part II, *infra*.

[18]  To succeed on a cause of action for fraud under Massachusetts law, a plaintiff must "prove that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage."  *Bolen*, 754 F. Supp. at 226; *Barrett Assocs., Inc. v. Aronson*, 346 Mass. 150, 152 (1963).  Plaintiffs allege that BMC misrepresented facts concerning whether Plaintiffs "would be paid legally" and "would be paid for all compensable time."  *See* Compl., ¶¶ 146-47.  Statements with regard to future conditions or occurrences, like Defendants' alleged statements regarding Plaintiffs' future pay, are not actionable as fraud under Massachusetts law unless "at the time the defendant made the statement, he or she did not intend to carry out the promise."  *See Bolen*, 754 F. Supp. at 226.  Plaintiffs have not alleged that Defendants made any statement that would meet this requirement.

allege that Defendants "deliberately misrepresented" the legality of their pay practices and that they "knowingly, unlawfully and intentionally took, appropriated and converted . . . wages." Compl., ¶¶ 128, 145. Fatal to their claims, however, Plaintiffs allege not a single fact demonstrating that Defendants in fact possessed this state of mind; nor do they provide any factual allegation remotely sufficient to ground an inference that these outrageous charges are plausible.

The Supreme Court's analysis in *Iqbal* provides guidance with respect to claims like these that turn on a defendant's supposed state of mind. The Court instructed that pleadings fail to state a claim for such a cause of action if they do not "contain any factual allegation sufficient to plausibly suggest [the alleged] state of mind." 129 S.Ct. at 1952. Because BMC is not a natural person, it can only be held liable for intentional torts where a particular agent responsible for the tortious action had the requisite state of mind.[19] Here, Plaintiffs make no factual allegation about any identifiable person's state of mind, nor do they plead facts that would lend plausibility to any other element of their fraud and conversion claims. Plaintiffs' reckless and scandalous allegations that BMC (and, through identical pleadings, four other hospital systems in and around Boston) intentionally deprived more than forty categories of workers hourly compensation is not supported by any factual allegations at all and falls short of the *Twombly* and *Iqbal* standard.[20]

### 4. Plaintiffs' Fraud and Negligent Misrepresentation Claims Fail to Meet the Heightened Pleading Standard Under Rule 9.

Even if Plaintiffs had pled their fraud and negligent misrepresentation claims with factual allegations sufficient to survive scrutiny under *Twombly*, Plaintiffs fall dramatically short of the

---

[19] *See Seelig v. Harvard Coop. Soc'y.*, 355 Mass. 532, 541 (1969) ("A corporation has no mind. While it can be responsible for the tortious acts that require the existence or absence of a certain state of mind if those acts are committed by an employee, the requisite state of mind must necessarily be that of the employee.").

[20] Plaintiffs' conversion claim fails on another ground as well. Conversion cannot be established where the property allegedly converted consists of funds that are owed pursuant to a contract or a debtor-creditor relationship. *See Gossels v. Fleet Nat'l Bank*, 453 Mass. 366, 372 ("Conversion occurs only when a defendant exercises wrongful control over specific personal property, not a debt."). This principle precludes Plaintiffs from recovering unpaid wages on a conversion theory. Massachusetts courts have held, for example, that sales commissions due to a real estate broker could not be recovered on a conversion theory. *Discover Realty Corp. v. David*, 2003 WL 22387138, at *3 (Mass App. Div. 2003). In addition, at least one other court applying this rule has specifically held conversion inapplicable in cases concerning unpaid wages. *See Temmen v. Kent-Brown Chevrolet Co.*, 605 P.2d 95, 99-100 (Kan. 1980).

heightened pleading standard for such claims imposed by Rule 9.  Federal Rule of Civil Procedure 9(b) requires that "the circumstances constituting fraud . . . shall be stated with particularity."  At a minimum, a plaintiff must identify the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which it was communicated.  *See McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980).  Claims of negligent misrepresentation also are subject to Rule 9(b), requiring "specification of the time, place, and content of an alleged false representation."  *See Lindner Dividend. Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 57 (D. Mass. 1995) (quoting *McGinty*, 633 F.2d at 228, superseded by statute on other grounds).  In other words, a plaintiff must plead the "who, what, when, and where" of an alleged fraud or negligent misrepresentation.  In addition, a plaintiff must make specific and separate allegations against each defendant.  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'");  *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (affirming dismissal because complaint was "bereft of any detail concerning who was involved in each allegedly fraudulent activity" but, instead, "the complaint lumped all the defendants together and [did] not specify who was involved in what activity").

Plaintiffs have not even come close to satisfying their Rule 9(b) pleading obligations, particularly when their cookie-cutter pleadings against BMC are compared to their allegations against the other hospital systems.  In support of their fraud and negligent misrepresentation claims, Plaintiffs merely assert that:

153. Defendants induced Plaintiffs and Class members to accept employment with defendants by misrepresenting to Plaintiffs and Class Members that they would be fully paid for all compensable time.

154. There was no reasonable basis for defendants to believe these representations because defendants had a continuing practice of failing to pay their employees for all compensable time, including applicable premium pay.  Defendants concealed the fact that they did not pay Plaintiffs and Class Members for all compensable time from Plaintiffs and Class Members.  Plaintiffs and Class Members relied upon defendants' representations by performing work and services for defendants.  This reliance was reasonable, as Plaintiffs and Class Members had every right to believe

that defendants would abide by their obligations to pay for all hours worked pursuant to the [sic] Mass. Gen. Law [sic] Ch. [sic] 149 §§ 148, 150 and Mass. Gen. Law [sic] Ch. [sic] 151 §§ 1A, 1B and common law.

155.   As a direct and proximate cause of defendants' fraud and negligent misrepresentations Plaintiffs and Class Members have suffered damages because they were not compensated for all compensable time that they worked both under and in excess of forty [sic] per week.

Compl., ¶¶ 153-155.   Plaintiffs fail to identify <u>any</u> of the following elements of a particularized pleading of fraud: the specific content of the representations alleged to be false, who committed the alleged fraud or misrepresentation, when it happened, or where it happened.   Nor do Plaintiffs make specific and separate allegations against any defendant in this case.   Instead, Plaintiffs' fraud and negligent misrepresentation allegations are exactly the sort of bare, conclusory allegations that the federal courts have rejected.[21]

### 5.   <u>Plaintiffs' Misrepresentation and Estoppel Claims Fail to Identify Any Promise on Which Plaintiffs Could Have Relied.</u>

Plaintiffs' negligent misrepresentation (Count IX), equitable estoppel (Count X), and promissory estoppel (Count XI) claims all fail for lack of any substantive allegation that Defendants made an identifiable representation to anyone regarding the issues raised in the Complaint or any allegation that would tend to make reliance on any representation by Defendants reasonable.   The doctrine of equitable estoppel requires a showing that the party asserting the estoppel claim reasonably relied on a material misrepresentation by the opposing party.   *See Mimya Hosp. Inc. v. U.S. Dep't of Health & Human Servs.*, 331 F.3d 178, 182 (1st Cir. 2003).   Plaintiffs' negligent misrepresentation and promissory estoppel claims require nearly the same showing as their estoppel claim.   "In order to recover for negligent misrepresentation, a plaintiff must prove that the defendant, in the course of his business, made a false representation of material fact for the purpose of inducing the plaintiff to rely upon it, and that the plaintiff did rely upon the representation as true, to his damage."   *See Kitner v.*

---

[21] Even where the pleadings concern "conditions of a person's mind" that may be alleged "generally" pursuant to Rule 9, a plaintiff may not "plead the bare elements of his cause of action, affix the label 'general allegation' and expect his complaint to survive a motion to dismiss."   *Iqbal,* 129 S.Ct. at 1954.

*CTW Transp., Inc.*, 53 Mass. App. Ct. 741, 749 (2002). Similarly, promissory estoppel requires a showing that Plaintiffs reasonably relied upon a promise made by Defendants. *Hall v. Horizon House Microwave, Inc.*, 24 Mass. App. Ct. 84, 94 (1987).

Plaintiffs make no effort to describe any representation or misrepresentation by any defendant that could ground their negligent misrepresentation, equitable estoppel, or promissory estoppel claims. Instead, they parrot the elements of these legal claims with the hollow assertion that "defendants deliberately misrepresented to plaintiffs that they were being properly paid for compensable time, even though Plaintiffs were not receiving pay for all compensable time." Compl., ¶ 145. Similarly, Plaintiffs do nothing to provide factual allegations that would allow the Court to conclude plausibly that Plaintiffs reasonably relied on any such representation or misrepresentation. Instead, Plaintiffs again sidestep their pleading obligation and state simply, "Plaintiffs and Class Members justifiably relied on the misrepresentations" and "[t]his reliance was reasonable, as Plaintiffs and Class Members had every right to believe that defendants would abide by their obligations pursuant to applicable Massachusetts law." Compl., ¶ 150. They fail, however, to provide any information whatsoever about who made the alleged representations, to whom they were made, or whether the context in which they were made was such that that reliance upon the statements may have been reasonable. Because of the conclusory nature of these allegations, Plaintiffs' equitable estoppel, negligent misrepresentation, and promissory claims fail to meet the *Twombly* standard.

### 6.    Plaintiffs Also Fail to Allege Facts to Support Their Remaining Equitable Claims.

Plaintiffs assert two other common law theories of liability under the headings of money had and received (Count VI), and *quantum meruit* (Count VII), both premised on the theory that Plaintiffs are due some payment under principles of equity. To establish a cause of action for money had and received, Plaintiffs must show that they are entitled to recover money that should not in justice be retained by Defendants and that in equity and good conscience should be paid to Plaintiffs. *Stone &*

*Webster Eng'g Corp. v. First Nat'l Bank & Trust Co. of Greenfield*, 345 Mass. 1, 7 (1962). *Quantum meruit* applies where "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Salamon v. Terra*, 394 Mass. 857, 859 (1985). Recovery on a theory of *quantum meruit* requires proof that the plaintiff conferred a measurable benefit upon the defendant, and that the defendant accepted the benefit amid circumstances in which a reasonable person would have expected to compensate the plaintiff.[22] *Bolen*, 747 F. Supp. at 106-07. Plaintiffs plead these equitable doctrines only in the most general and conclusory terms, merely reciting the legal elements of such a claim by asserting that "Defendants have received . . . financial gain under such circumstances that, in equity and good conscience, defendants ought not to be allowed to profit." Compl., ¶ 136. Moreover, while Plaintiffs base their equitable claims upon their assertions that BMC failed to pay them wages, those allegations are themselves insufficiently pled. The Court should therefore dismiss Plaintiffs' claims for *quantum meruit* and money had and received.

### B. Plaintiffs' Claims Against the Individual Defendants Fail to Satisfy the *Twombly* and *Iqbal* Pleading Standards.

Plaintiffs' claims against the two individual defendants, Elaine Ullian, BMC's President and CEO, and James Canavan, BMC's Director of Human Resource Operations,[23] also are insufficient to survive a motion to dismiss. The Complaint surmises that these individuals are liable to Plaintiffs and the class they purport to represent because these individuals – apparently by virtue of assumptions Plaintiffs make from their job titles – have "the authority to . . . make decisions that concern defendants' operations, including functions related to employment, human resources, training, payroll and benefits," as well as authority to "make decisions that concern the policies defendants adopt and the

---

[22] Massachusetts courts often treat *quantum meruit* as synonymous with a cause of action for implied contract. *See*, *e.g.*, *Salamon*, 394 Mass. at 859 (using terms quasi-contract, contract implied in law, and *quantum meruit* interchangeably to represent cause of action for "an obligation created by law for reasons of justice") (quotations omitted). Neither *quantum meruit* nor implied contract can be invoked as a cause of action where an express contract governs the parties' relations. *See Boswell v. Zephyr Lines Inc*., 414 Mass. 241, 250 (1993). Plaintiffs fail to plead the lack of an express contract – in fact they specifically assert that their employment relationship with BMC is governed by an express contract. Compl., ¶ 107; *see also* Part II, *infra*.

[23] Providing further evidence of Plaintiffs' sloppy and boilerplate pleading style, Mr. Canavan is incorrectly identified in the Complaint as BMC's "Senior Human Resource Director."

implementation of those policies." Compl., ¶¶ 21-30, 38. Plaintiffs disingenuously reason that because these individuals have "authority" to conduct these activities, they must have been "actively involved" in the decisions at issue in this case. Compl., ¶¶ 31-35, 39-52. These layered, conclusory allegations are not entitled to a presumption of truth, and the claims against the individual defendants cannot survive. *See Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555. In *Iqbal*, the Supreme Court dismissed claims against the government officials individually named in a complaint because the pleadings contained insufficient facts to tie them to the wrongdoing alleged. *See* 129 S.Ct. at 1952. Here, Plaintiffs similarly identify no facts that tie the individual defendants to any alleged wrongdoing; instead, they merely rely on their titles at BMC to infer culpability.[24] Plaintiffs' counsel have plied this tactic of making prolix but substanceless allegations against a corporate defendant's senior officers before, and have seen their complaint rejected for failing to meet the *Twombly* and *Iqbal* standard.[25] *See Tracy v. NVR, Inc.*, 2009 WL 3153150, at *5-6 (W.D.N.Y. 2009) (citing *Iqbal* and denying motion to amend complaint to add individual defendants as futile because "upon careful analysis, the complaint asserts little more than because [one] was Chairman and [another] was President of [the corporate defendant], then each must have had authority to take the actions that comprise the [test for employer status under the FLSA], and that because each had the authority to take those actions, then each must have in fact taken those actions"), *affirmed* 2009 WL 3647862 (W.D.N.Y. Nov. 5, 2009).[26] There is no reason that the result should be different here, and the Court should dismiss Ms. Ullian and Mr. Canavan from this action.

---

[24] Apropos of this lack of specificity, Plaintiffs' counsel have crafted nearly <u>identical</u> allegations against individual defendants working for four other hospital systems in this District and numerous hospital systems elsewhere. *See supra*, notes 4, 11.

[25] Indeed, Plaintiffs' factual allegations regarding the individual defendants in this action bear a striking resemblance to the factual allegations rejected as conclusory in the *Tracy* case, which concerns individuals working in an entirely different industry. *See Tracy*, 2009 WL 3153150, at *5-6.

[26] In *Tracy*, the district court later also rejected the plaintiffs' attempt to pursue claims against a senior human resources officer as an individual defendant. The court held that the plaintiffs' "boilerplate allegations that [the officer met] the various prongs of the economic reality test stated solely upon information and belief and without any supporting details" were "insufficient to raise plaintiffs' right to relief 'above a speculative level' with respect to that individual's liability as an employer under the FLSA." 2009 WL 3647862 (W.D.N.Y. Nov. 5, 2009) (attached as Exhibit B).

## II.    FEDERAL LABOR LAW PREEMPTS PLAINTIFFS' STATE LAW CLAIMS.

Plaintiffs and the majority of the other BMC employees they purport to represent are unionized. These unionized employees are subject to collective bargaining agreements, which contain detailed provisions governing breaks, overtime compensation, premium pay, on-call pay, shift differentials, shift assignments, fulfilling staffing needs, and training.

With very few exceptions, state law plays no role in resolving disputes arising out of unionized, private employment settings.  Comprehensive federal statutes dominate the labor law landscape.  The National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 141, *et seq.*, grants employees the right to join unions, governs representation elections, mandates good faith collective bargaining once a union has been elected, creates administrative procedures to investigate and resolve labor disputes, and delegates the investigation and resolution of labor disputes to the National Labor Relations Board ("NLRB"). Section 301 of the LMRA, 29 U.S.C. § 185(a), gives federal courts jurisdiction to resolve disputes arising out of contracts reached by unions and employers in the NLRA bargaining process.  It is these two federal statutes, not Massachusetts law, on which the instant case turns.

Courts have recognized two separate doctrines of federal preemption that bar state law claims asserted on behalf of unionized employees.  "Section 301 preemption" preserves the federal character of labor agreements, *see Textile Workers Union v. Lincoln Mills*, 353 U.S. 448 (1957), by rejecting state law claims that turn on the interpretation of those agreements.  In addition, *Garmon* preemption preserves the exclusive province of the NLRB to adjudicate violations of the NLRA by forbidding courts from hearing claims involving conduct that the NLRA even "arguably" prohibits.  *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959).  Each of these forms of preemption independently serves to bar the claims in Plaintiffs' Complaint.

### A.    Section 301 Preempts Plaintiffs' State Law Claims.

Where the resolution of a state law claim substantially depends on an analysis of the terms of a CBA, that claim must be brought, if at all, under Section 301 of the LMRA.  A state law claim

requiring interpretation of a CBA that asserts any cause of action other than a contract claim under Section 301 is preempted and must be dismissed.[27]  *See, e.g.*, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 559-61 (1968); *Flibotte v. Pa. Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997)  (Section 301 preempts claim "if it alleges conduct that arguably constitutes a breach of a duty that arises pursuant to a collective bargaining agreement" or "if its resolution arguably hinges upon an interpretation of the collective bargaining agreement.") (internal quotations omitted).  Plaintiffs' claims in this case depend on an interpretation and application of the CBAs between BMC and the unions that represent its employees, and those claims cannot survive here.

     Plaintiffs' state law statutory wage claims necessitate an interpretation of the CBAs to determine how employees should be paid for the hours that they allegedly worked under the various provisions governing scheduling, breaks, training, and pay contained in the collective bargaining agreements.  The First Circuit's *Adames v. Executive Airlines, Inc.*, 258 F.3d 7 (1st Cir. 2001), is controlling.  In that case, a flight attendant argued that her employer violated Puerto Rico wage and hour law because it did not pay her for all hours worked.  The court held that her claims were preempted by the Railway Labor Act[28] because it was impossible to determine whether the plaintiff was paid for all hours worked without interpreting the CBA.  The court would first need to interpret the agreement to determine how many hours the employee "worked," and then determine both base and hourly pay in order to adjudicate any damages.  258 F.3d at 13.  Courts have applied the same reasoning to dismiss Massachusetts

---

[27] The preemption doctrine was developed to avoid differing interpretations of the parties' rights and obligations.  *See Local 174, Teamsters of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962).  As the Supreme Court explained in *Lingle v. Norge Div. of Magic Chef, Inc.*:

> If the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is preempted and federal labor-law principles – necessarily uniform throughout the Nation – must be employed to resolve the dispute.

486 U.S. 399, 405-406 (1988).  Indeed, "[s]tate law does not exist as an independent source of private rights to enforce collective bargaining contracts."  *Caterpillar*, 482 U.S. at 394.

[28] Although *Adames* was decided under the Railway Labor Act, the same analysis is applicable to preemption under Section 301 of the LMRA.  *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 263 (1994); *Adames*, 258 F.3d at 12, n.3.

statutory wage claims as preempted. *Mitchell v. Globe Newspaper Co., Inc.*, 602 F. Supp. 2d 258 (D.

Mass. 2009) (claim under Mass. Gen. Laws ch. 149, § 148 preempted by Section 301).

Plaintiffs' state law wage claims here are similar to the preempted claims in *Adames*. To assess

Plaintiffs' claims that BMC's alleged "policy" of automatically deducting thirty minutes of time per

day for a meal break violated Massachusetts law, the Court would have to interpret the CBAs'

provisions governing meal and rest breaks, shift differentials, pay for employees who have been

temporarily assigned, and premium pay. The CBAs require a rest break for a certain number of hours

worked,[29] but they also recognize that sometimes employees will have to work during their break.[30] If

so, the agreements generally provide that the employees will be paid.[31] The rate at which employees

are paid, in turn, is governed by a welter of CBA provisions dealing with shift differentials,[32] pay for

unscheduled shifts,[33] pay for assignment to charge nurse and nurse manager positions,[34] pay for

---

[29] *See* CBA between MNA and BMC, Art. IX, Section 4; CBA between 1199SEIU United Healthcare Workers East and BMC (Registered Nurses), Art. 9, Section 4; CBA between AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 8, Section 2; CBA between 1199SEIU United Healthcare Workers East and BMC (Skilled Maintenance), Art. VIII, Sections 2 and 12; CBA between AFSCME/AFL-CIO/CLC and BMC (Skilled Maintenance), Art. VIII, Sections 2 and 12.

[30] *See* CBA between MNA and BMC, Art. IX, Sections 2, 4, 6; CBA between 1199SEIU United Healthcare Workers East and BMC (Registered Nurses), Art. 9, Sections 2-5; CBA between AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 8, Sections 2, 12, 15; CBA between 1199SEIU United Healthcare Workers East and BMC (Skilled Maintenance), Art. VIII, Sections 2 and 12; CBA between AFSCME/AFL-CIO/CLC and BMC (Skilled Maintenance), Art. VIII, Sections 2 and 12.

[31] *See* CBA between MNA and BMC, Art. XI; CBA between 1199SEIU United Healthcare Workers East and BMC (Registered Nurses), Art. 12; CBA between AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 31; CBA between 1199SEIU United Healthcare Workers East and BMC (Skilled Maintenance), Art. XXXI; CBA between AFSCME/AFL-CIO/CLC and BMC (Skilled Maintenance), Art. XXXI.

[32] *See* CBA between MNA and BMC, Art. XIII; CBA between 1199SEIU United Healthcare Workers East and BMC (Registered Nurses), Art. 14; CBA between AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 9; CBA between 1199SEIU United Healthcare Workers East and BMC (Skilled Maintenance), Art. IX; CBA between AFSCME/AFL-CIO/CLC and BMC (Skilled Maintenance), Art. IX.

[33] *See* CBA between MNA and BMC, Art. XII; CBA between the 1199SEIU United Healthcare Workers East and BMC (Registered Nurses), Art. 13; CBA between the AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 8, Sections 10 and 11; CBA between 1199SEIU United Healthcare Workers East and BMC (Skilled Maintenance), Art. VIII, Sections 10 and 11; CBA between AFSCME/AFL-CIO/CLC (Skilled Maintenance), Art. VIII, Sections 10 and 11.

[34] *See* CBA between MNA and BMC, Art. XI, Sections 12 and 13, Art. XIII, Section 4; CBA between the 1199SEIU United Healthcare Workers East and BMC (Registered Nurses), Art. 14, Section 9; CBA between the AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 9, Section 5.

"bonus" shifts,[35] "float pool" differentials,[36] overtime pay for hours worked in excess of a certain

number in a particular day,[37] overtime pay for hours worked in excess of forty in a given workweek,[38]

pay for employees temporarily assigned to another job classification,[39] and pay for "on call" employees

who report to work,[40] pay for working on a holiday,[41] as well as provisions governing pay for time not

actually worked, such as "on call" time[42] and time spent attending meetings on behalf of the union.[43]

Only after digesting this full menu of pay provisions can the Court understand how many hours

each employee actually worked (as contrasted with how many hours employees were paid for), and

---

[35] See CBA between MNA and BMC, Art. XIII, Section 3; CBA between the 1199SEIU United Healthcare Workers East and BMC (Registered Nurses), Art. 14, Section 8, Appx. H; CBA between the AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 8, Sections 10 and 11.

[36] See CBA between the 1199SEIU United Healthcare Workers East and BMC (Registered Nurses), Art. 12, Section 13, Art. 14, Section 5; CBA between the AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 9, Section 8.

[37] See CBA between MNA and BMC, Art. XII, Section 1(b) and (c); CBA between the 1199SEIU United Healthcare Workers East and BMC (Registered Nurses), Art. 13; CBA between the AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 8, Sections 10 and 11; CBA between 1199SEIU United Healthcare Workers East and BMC (Skilled Maintenance), Art. VIII, Section 11; CBA between AFSCME/AFL-CIO/CLC (Skilled Maintenance), Art. VIII, Section 11.

[38] See CBA between MNA and BMC, Art. XII; CBA between the 1199SEIU United Healthcare Workers East and BMC (Registered Nurses), Art. 13; CBA between the AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 8; CBA between 1199SEIU United Healthcare Workers East and BMC (Skilled Maintenance), Art. VIII, Section 11; CBA between AFSCME/AFL-CIO/CLC (Skilled Maintenance), Art. VIII, Section 11.

[39] See CBA between MNA and BMC, Art. VIII, Sections 1 and 2; CBA between the 1199SEIU United Healthcare Workers East and BMC (Registered Nurses), Art. 8, Sections 1 and 2, Art. 10, Section 9; CBA between the AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 7, Sections 1 and 2; CBA between 1199SEIU United Healthcare Workers East and BMC (Skilled Maintenance), Art. VII, Sections 1 and 2; CBA between AFSCME/AFL-CIO/CLC (Skilled Maintenance), Art. VII, Sections 1 and 2.

[40] See CBA between MNA and BMC, Art. XIII, Section 5; CBA between the 1199SEIU United Healthcare Workers East and BMC (Registered Nurses), Art. 14, Section 4; CBA between the AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 9, Section 3; CBA between 1199SEIU United Healthcare Workers East and BMC (Skilled Maintenance), Art. IX, Section 3; CBA between AFSCME/AFL-CIO/CLC (Skilled Maintenance), Art. IX, Section 3.

[41] See CBA between MNA and BMC, Art. XII, Section 2, Art. XX; CBA between the 1199SEIU United Healthcare Workers East and BMC (Registered Nurses), Art. 21; CBA between the AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 8, Sections 10 and 11; CBA between 1199SEIU United Healthcare Workers East and BMC (Skilled Maintenance), Art. XVI; CBA between AFSCME/AFL-CIO/CLC (Skilled Maintenance), Art. XVI.

[42] See CBA between MNA and BMC, Art. Art. XIII, Section 5; CBA between the 1199SEIU United Healthcare Workers East and BMC (Registered Nurses), Art. 14, Section 4; CBA between the AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 9, Section 3; CBA between 1199SEIU United Healthcare Workers East and BMC (Skilled Maintenance), Art. IX, Section 3; CBA between AFSCME/AFL-CIO/CLC (Skilled Maintenance), Art. IX, Section 3.

[43] See CBA between MNA and BMC, Art. XVIII, Section 4; CBA between the 1199SEIU United Healthcare Workers East and BMC (Registered Nurses), Art. 19, Sections 4 and 8, Appx. C; CBA between the AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 14, Section 4, 26(B); CBA between 1199SEIU United Healthcare Workers East and BMC (Skilled Maintenance), Art. XIV, Sections 4 and 8; CBA between AFSCME/AFL-CIO/CLC (Skilled Maintenance), Art. XIV, Sections 4 and 8.

then determine whether and when each employee was entitled to a break, and, if so, the rate he should have been paid for working through his break, and then, finally, determine whether BMC did or did not pay each employee for all hours worked. To see why, the Court need only consider the example of a nurse who was on call on a holiday after attending meetings as a union representative the previous day, reported to work in response to a call to work in a different job classification, and continued working through one or more unscheduled shifts, so that the nurse ended up being entitled to daily and weekly overtime under the CBA. In such a case, a CBA interpreter (commonly called an "arbitrator") would have to figure out how many hours the nurse "worked," how many breaks the nurse was entitled to, and at what rate the nurse was entitled to be paid (*e.g.*, whether the nurse would be entitled to "pyramid" the various entitlements over and above her standard wage rate as set forth in the collective bargaining agreement). The only way one could determine these questions would be to sit not as an Article III judge but as a CBA arbitrator.

Plaintiffs' state common law claims also would require interpretation of the CBAs that cover BMC's employees. Their contract claims would require the Court to interpret the CBAs because the contracts Plaintiffs claim BMC breached are those CBAs.[44] Plaintiffs' claims for fraud, negligent misrepresentation, and conversion also would require the Court to interpret the CBAs. Such claims depend on proof that BMC breached those CBAs, because if BMC complied with the agreements, then it misrepresented nothing and did not wrongly "convert" Plaintiffs' wages. *See DiGiantommaso v. Globe Newspaper Co., Inc.*, 2009 U.S. Dist. LEXIS 58825 (D. Mass. 2009) (unjust enrichment, promissory estoppel, conversion, and breach of the implied covenant of good faith and fair dealing claims based on failure to pay wages for time worked during breaks preempted by § 301); *Hayes v. Aramark Sports, LLC*, C.A. No. 08-10700 (D. Mass. Mar. 30, 2009) (claims for violations of Mass. Gen. Laws ch. 149, § 148, violations of Mass. Gen. Laws ch. 151, § 1A, *quantum meruit*/unjust

---

[44] As discussed below, to the extent that Plaintiffs purport to assert claims based on something other than the CBAs, those claims are subject to *Garmon* preemption.

enrichment, and breach of contract preempted by § 301). The resolution of Plaintiffs' promissory estoppel, assumpsit, and *quantum meruit*/unjust enrichment claims also require analysis of the CBAs because these claims rely on the notion of a promise or implied contract. *See* Sections I(A)(5) and (6), *supra*. It is black-letter law that a court will not imply a contract where there is an express contract covering the same subject. *See, e.g.*, *York v. Zurich Scudder Invs., Inc.*, 66 Mass. App. Ct. 610 (2006). Thus, the Court here cannot determine whether there is an express contract covering the same subject matter as any alleged implied contract without interpreting the CBAs.

Each of Plaintiffs' state law claims would require the Court to engage in an analysis of the wage and hour provisions of the CBAs that set the terms and conditions of employment for members of the putative classes that Plaintiffs purport to represent. Those claims are preempted by § 301 and must be dismissed.

### B. *Garmon* Preemption Requires Dismissal of Plaintiffs' State Law Claims.

To the extent Plaintiffs contend that their claims are based on contracts other than the CBAs, those claims are subject to *Garmon* preemption. The *Garmon* rule states that "when an activity is arguably subject to § 7 or § 8 of the National Labor Relations Act, the states as well as the federal courts must defer to the exclusive competence of the NLRB if the danger of state interference with national labor policy is to be averted." *Chalk Servs., Inc. v. Mass. Comm'n Against Discrimination*, 70 F.3d 1361, 1364 (1st Cir. 1995).

An employer may not "refuse to bargain collectively with the representatives of his employees" regarding mandatory subjects of bargaining. 29 U.S.C. § 158(a)(5); *see NLRB v. Wooster Div. of Borg-Warner Corp.*, 356 U.S. 342 (1958). Wages, hours, and overtime are all mandatory subjects of bargaining. *See* 29 U.S.C. § 158(d) ("to bargain collectively is . . . to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment"). An employer may not negotiate individual contracts with employees governing wages, hours, and overtime – mandatory subjects of bargaining – without union consent. *See Brown v. Pro Football, Inc.*, 50 F.3d

1041 (D.C. Cir. 1995) ("employers are positively prohibited from seeking to bargain with individual

employees, absent consent from the union"); *Wood v. Nat'l Basketball Ass'n*, 809 F.2d 954 (2d Cir.

1987) ("Once an exclusive representative has been selected, the individual employee is forbidden by

federal law from negotiating directly with the employer absent the representative's consent.").

Thus, if this Court were called upon to conclude the existence of and enforce such individual

agreements, it would permit what the NLRA forbids. Each of the non-statutory claims in Plaintiffs'

Complaint are premised on the assertion that BMC promised to pay them for all hours worked and then

did not do so.  Bypassing an employee's union to directly deal with the employee on the subject of

wages and hours is an unfair labor practice and, making such individual agreements unenforceable. *See*

*J.I. Case Co. v. NLRB*, 321 U.S. 332, 337 (1944) ("[i]ndividual contracts no matter what the

circumstances that justify their execution or what their terms, may not be availed of to defeat or delay

the procedures prescribed by the National Labor Relations Act looking to collective bargaining").

Since it is the NLRB, and not this Court, that has "the exclusive power to decide whether unfair labor

practices have been committed and to determine the action the employer must take to remove or avoid

the consequences of his unfair labor practice," *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 365 (1940),

*Garmon* preemption bars Plaintiffs' claims as to BMC's unionized employees.

**III.    PLAINTIFFS' STATUTORY CLAIMS FAIL BECAUSE BMC'S EMPLOYEES ARE SUBJECT TO THE
STATE HOSPITAL EXEMPTION.**

Even if Plaintiffs had pled facts sufficient to substantiate a claim under the Wage Act or the

Minimum Wage Law, that claim would fail because BMC's employees are exempted from coverage

under those statutes.  Plaintiffs' failure to appreciate these state law exemptions is further evidence of

their disregard for rules of pleading, and proof that their campaign against BMC is merely part of the

assault Plaintiffs' counsel have launched against hospitals around the country.  The Massachusetts

Minimum Wage Law expressly states that its overtime provisions "shall not be applicable to any

employee who is employed . . . in a <u>hospital</u>, sanitorium, convalescent or nursing home, infirmary, rest

home or charitable home for the aged." Mass. Gen. Laws ch. 151, § 1A(16) (emphasis added). The statute's industry exemptions, including the hospital exemption, are premised on the rationale that jobs within the exempted institutions "may require continuous service by a particular person beyond the confines of an eight hour schedule." *Fitz-Inn Auto Parks, Inc. v. Comm'r of Labor & Indus.*, 350 Mass. 39, 42 (1965).[45] There can be no doubt that the exemption found in §1A(16) applies in this case. Boston Medical Center is a hospital under any definition, and Plaintiffs affirmatively assert as much in their Complaint. *See* Compl., ¶¶ 3-4 ("Boston Medical Center is . . . engaged in the operation of a hospital . . . .").

Likewise, Mass. Gen. Laws ch. 149, § 148, states that "[the Wage Act] shall not apply to an employee of a hospital which is supported in part by contributions from the commonwealth or from any city or town, nor to an employee of an incorporated hospital which provides treatment to patients free of charge, or which is conducted as a public charity. . . ." By the plain language of this section, BMC's employees are doubly exempted from coverage because BMC is both a public charity and a publicly funded hospital.[46] Plaintiffs' cookie-cutter pleadings, recycled from lawsuits in New York and Pennsylvania, simply do not work in Massachusetts. Plaintiffs' statutory claims must therefore be dismissed.

---

[45] While there are no reported court decisions regarding the hospital exemption, the Division of Occupational Safety ("DOS"), which is charged with administering the Minimum Wage Law, opined in a 2001 letter that employees of a drug and alcohol treatment center were exempt from overtime under the provision, provided that the treatment center fell within the definition of a "sanitorium." DOS Op. Ltr. MW-2001-016 (Nov. 19, 2001) (attached as Exhibit C). In that letter, DOS also noted that it understood the treatment center not to be "operating within a hospital," indicating that if it were, the exemption would apply regardless of whether the center met the definition of a sanitorium. *See id.* In addition, DOS has interpreted the similarly worded hotel exemption found in § 1A(12) to "include all workers who work in some aspect of hotel operations . . . within the physical confines of a hotel property." DOS Op. Ltr. MW-2006-001 (Mar. 10, 2006) (attached as Exhibit D). There is no dispute here, and the Complaint, itself, alleges that BMC is a "hospital." *See* Compl., ¶¶ 3-4.

[46] *See* 2008 Mass. Acts. ch. 302 (appropriating $64 million in state funds for the "public-service hospital operated by the Boston Medical Center Corporation"); I.R.S. Publication 78, *Cumulative List of Organizations described in Section 170(c) of the Internal Revenue Code of 1986*, available at http://www.irs.gov/app/pub-78/ (listing Boston Medical Center as organization eligible to receive tax-deductable charitable donations).

**IV.    THE MASSACHUSETTS WAGE ACT AND MINIMUM WAGE LAW PREEMPT PLAINTIFFS' DERIVATIVE COMMON LAW CLAIMS.**

Plaintiffs' numerous common law claims, all of which derive from and improperly duplicate Plaintiffs' Wage Act and Minimum Wage Law claims, fail because state wage statutes preempt common law claims that are grounded in the same facts as the statutory claims.  Common law claims founded on duties that are "wholly the creation of statute" are preempted by the statute.  *Sch. Comm. of Boston v. Reilly*, 362 Mass. 334, 338-9 (1972).  "Where a statute has been enacted seemingly intended to cover the whole subject to which it relates, including a remedy for its infraction, other provisions of the common law, including such as are remedial in nature, are thereby superseded." *Sch. Comm. v. City of Lowell*, 265 Mass. 353, 356 (1928); *see also Dobin v. CIOView Corp.*, No. 2001-00108, 2003 WL 22454602, at *9 (Mass. Super. Ct. Oct. 29, 2003) (Gants, J.) (where Legislature "has provided a statutory cause of action to an at-will employee who has been discharged for exercising [] statutory rights, there is no need to add a common law remedy").  Indeed, in four recent cases, courts have applied this reasoning and dismissed common law claims that are premised on violations of Massachusetts wage statutes.  *See Mouiny v. Comm. Flats Dev. Corp.*, No. SUCV-2006-1115-BLS1 (Mass. Super. Ct. Aug. 20, 2008) (Gants, J.), pp. 14-15 (attached as Exhibit E); *Hernandez v. Hyatt Corp.*, No. SUCV-2005-0569-BLS1 (Mass. Super. Ct. May 4, 2009) (Hinkle, J.), p. 8 (attached as Exhibit F); *Godt v. Anthony's Pier 4, Inc.*, No. SUCV-2007-3919-BLS1 (Mass. Super. Ct. Mar. 24, 2009) (Hinkle, J.), p. 8 (attached as Exhibit G); *DePina v. Marriott Int., Inc*, No. SUCV-2003-05434-G (Mass. Super. Ct. July 28, 2009) (Henry, J.), pp. 18-20 (attached as Exhibit H).[47]  As in this case, the common law claims in *Mouiny*, *Hernandez*, *Godt*, and *DePina* all derived from and improperly duplicated wage claims.[48]  The court in each of those cases dismissed each of the common law claims

---

[47] Each of these cases alleged violations of the Massachusetts Tip Statute, Mass. Gen. Laws ch. 149, § 152A, which contains the same enforcement scheme and penalties as the Wage Act.  *See* Mass. Gen. Laws ch. 149, §§ 27C, 150.

[48] In addition to their claims under the Tip Statute, the plaintiffs in *Mouiny* asserted claims for declaratory judgment, failure to pay wages, restitution, money had and received, equitable restitution, breach of contract, and a request for accounting. *Mouiny*, n.1.  The plaintiffs in *Hernandez* asserted a request for declaratory judgment and claims for money had and received, breach of contract, breach of fiduciary duty, conversion, and a request for accounting.  In *Godt*, the plaintiffs

premised on alleged violations of the state wage statutes.  In *Mouiny*, then-Superior Court Justice Gants noted that if the plaintiffs prevailed on their wage claim, they would be entitled to restitution, with interest, as well as the remedies in Mass. Gen. Laws ch. 149, § 27C – clearly a situation "[w]here a statute has been enacted . . . to cover the whole subject to which it relates, including a remedy for its infraction" and in which "other provisions of common law, including such as are remedial in nature, are thereby superseded."  *Mouiny*, p. 15 (quotation omitted); *see also Hernandez*, p. 8 (dismissing common law claims based on reasoning in *Mouiny*); *Godt*, p. 11 (same).  Here, Plaintiffs' common law claims fail for the same reason.[49]

Plaintiffs' common law claims are based on the same alleged facts as their statutory claims – namely, that BMC failed to pay Plaintiffs and putative class members for all hours worked.  Indeed, in their prayer for relief, Plaintiffs' only specific request for damages seeks "an award of the value of Plaintiffs' and Class Members' <u>unpaid wages</u>, including fringe benefits" without any reference to other damages stemming from their common law claims.  Further, their request for injunctive relief seeks to enjoin BMC "from engaging in the aforementioned <u>pay violations</u>."

Plaintiffs' motive in bringing these duplicative claims is clear: they seek to extend the statute of limitations, thereby potentially garnering a larger class of employees and a longer period of time over which to seek damages.[50]  The Legislature's intent to preempt common law claims seeking to enforce

---

[49] In an analogous context, courts have held that common law counts that depend on establishing a statutory violation of the FLSA are preempted by that statute, on the grounds that the FLSA provides an elaborate enforcement scheme that precludes duplicative common law claims with potentially conflicting remedies or statutes of limitations.  *See, e.g.*, *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194-195 (4th Cir. 2007) (holding plaintiffs' breach of contract, negligence, and fraud claims precluded by FLSA's exclusive enforcement scheme); *Chen v. Street Beat Sportswear, Inc.*, 364 F. Supp. 2d 269, 293 (E.D.N.Y. 2005) (holding that FLSA preempted plaintiffs' negligence claims under New York law).  As these courts have recognized, where plaintiffs premise their common law claims on the <u>exact same set of facts</u> as their statutory claims, the statutory scheme preempts the common law claims.  The same analysis applies to the dismissal of common law claims based on FLSA preemption in the class action context.  *See Anderson*, 508 F.3d at 182; *Sorenson v. CHT Corp.*, 2004 WL 442638, at *1 (N.D. Ill. 2004); *Morgan v. SpeakEasy, LLC*, 2007 WL 2757170, at *1 (N.D. Ill.2007); *Moeck*, 2006 WL 42368, at *1 (D.N.J. 2006).

[50] The statute of limitations on Plaintiffs' contract claim is six years, and the statute of limitations for Plaintiffs' other common law claims is three years.

rights under the state's wage laws is evident from the fact that it promulgated statutes that impose a comprehensive enforcement scheme with specialized remedies, including provisions for multiple damages and attorneys' fees, alongside a three-year statute of limitations for violations of the Wage Act and a two-year statute of limitations for violations of the Minimum Wage Law. These enhanced statutory remedies cannot be sought in addition to common law claims for single damages over a period longer than the Legislature has established for such wage claims. The Court should not permit Plaintiffs to perform an end-run around the Legislature's intent by recasting their statutory wage claims (with their two- and three-year statutes of limitations) as contract claims in an attempt to leverage a six-year limitations period.

Because Plaintiffs' common law claims are based on the same factual assertions and seek the same measure of damages as their statutory wage claims, they are preempted, and the Court therefore should dismiss them.

## V.    PLAINTIFFS' ESTOPPEL CLAIM SHOULD BE DISMISSED.

In addition to its pleading deficiency, Plaintiffs' equitable estoppel claim (Count X) fails because Plaintiffs misconstrue the nature of the estoppel doctrine. Equitable estoppel is a purely defensive concept: "It is available only for protection, and cannot be used as a weapon of assault. *Dickerson v. Colgrove*, 100 U.S. 578, 580-81 (1879) (emphasis added); *see also Kuznyetsov v. West Penn Allegheny Health Sys., Inc.*, No. 09-379 (W.D. Pa., filed July 20, 2009) (docket no. 118) ("estoppel serves as a shield and not a sword"). Numerous courts have recognized that because it cannot be used offensively, estoppel does not – indeed, cannot – give rise to a cause of action. *See Val-Land Farms, Inc., v. Third Nat'l Bank in Knoxville*, 937 F.2d 1110, 1115 (6th Cir. 1991) ("equitable estoppel does not create a cause of action under Tennessee law"); *Wheat Ridge Urban Renewal Auth. v. Cornerstone Group XXII, LLC*, 176 P.3d 737, 741 (Colo. 2007) ("the doctrine of equitable estoppel is not a cause of action at all, but rather a defensive doctrine"); *Hoye v. Westfield Ins. Co.*, 487 N.W.2d 838, 842 (Mich. 1992) ("the general rule is that equitable estoppel is a doctrine, not a cause of action

. . . [and it] therefore provides no remedy such as damages"); *see also Adrian v. Mesirow Fin. Structured Settlements*, LLC, 2009 WL 2596508, at *1 n.3 (D.P.R. 2009) ("Plaintiff seems to confuse theories of liability with other sorts of assertions in her amended complaint: she lists as [a] claim . . . 'equitable estoppel' [which is a] common theor[y] of defense.").  By its very nature, Plaintiffs' estoppel "cause of action" fails to state a claim upon which relief may be granted, and for that reason it should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be granted in its entirety.

> Respectfully submitted,
>
> BOSTON MEDICAL CENTER
> CORPORATION, ELAINE ULLIAN, and
> JAMES CANAVAN,
>
> By their attorneys,
>
>  /s/ Richard L. Alfred
> Richard L. Alfred (BBO # 015000)
> Arthur G. Telegen (BBO # 494140)
> Kristin G. McGurn (BBO # 559687)
> C.J. Eaton (BBO # 660726)
> SEYFARTH SHAW LLP
> Two Seaport Lane, Suite 300
> Boston, MA 02210-2028
> Telephone:    (617) 946-4800
> Telecopier:    (617) 946-4801

DATED:  December 11, 2009

---

CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2009, this document was filed through the Court's ECF system and that Plaintiffs' counsel includes registered users designated to receive Notices of Electronic Filings in this matter.

 /s/ Richard L. Alfred
Richard L. Alfred

---

BO1 16003936.8