UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELIZABETH MANNING, LISA RIVERS and RHONDA WILLIAMS, *on behalf of themselves and all other employees similarly situated,*  *Plaintiffs,* v.  BOSTON MEDICAL CENTER CORPORATION, BOSTON REGIONAL MEDICAL CENTER, LLC, BOSTON REGIONAL MEDICAL CENTER, INC., ELAINE ULLIAN and JAMES CANAVAN, et al,  *Defendants.* | Civil Action No. 09-cv-11724  **ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THEIR MOTION FOR REMAND**
(Leave to File Granted on December 11, 2009)

**PRELIMINARY STATEMENT**

In their response to plaintiffs' motion to remand, defendants use a convoluted hypothetical to support their argument that this is the court of proper jurisdiction. Defendants' suggest that the hypothetical would require interpretation of the collective bargaining agreements ("CBA"), and therefore, the Court will have to interpret the CBA to rule on all of the plaintiffs' claims, which are grounded solely in state statutory and common laws. *See* Defendants' Memorandum of Law in Response to Plaintiffs' Motion to Remand at 10 ("Defendants' Response").

However, defendants' best effort fails because the Court would not need to turn to the CBA to determine whether the hypothetical nurse would prevail on her state law statutory wage claims. Therefore, this Court should remand the action to Massachusetts Superior Court, the court of original jurisdiction.

**ARGUMENT**

In defendants' response, they argue that plaintiffs' statutory wage claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"), therefore making removal proper. *See* Defendants' Response at 7-11. Defendants start by listing a host of provisions that they claim will require interpretation, citing several CBAs.[1] *See* Defendants' Response at 8-10.

---

[1]   These provisions include those "governing scheduled shifts, meal and rest breaks, shift differentials, pay for employees who have been temporarily assigned, and premium pay. The CBAs require a rest break after a certain number of hours worked, but they also recognize that sometimes employees will have to work during their break. If so, the agreements generally provide that the employees will be paid. The rate at which employees are paid, in turn, is governed by a welter of CBA provisions dealing with shift differentials, pay for unscheduled shifts, pay for assignment to charge nurse and nurse management positions, pay for 'bonus' shifts, 'float pool' differentials, overtime pay for hours worked in excess of a certain number in a particular day, overtime pay for hours worked in excess of forty in a given workweek,  pay for employees temporarily assigned to another job classification, and pay for 'on-call' employees who report to work, pay for

Defendants then provide the Court with an example, in an attempt to prove the necessity of interpretation of the CBA:

> "[T]he Court need only consider the example of a nurse who was on call on a holiday after attending meetings as a union representative the previous day, reported to work in response to a call to work in a different job classification, and continued working through one or more unscheduled shifts, such that the nurse was entitled to daily and weekly overtime under the CBA."

*See* Defendants' Response at 10.

As plaintiffs will show below, interpretation would not be necessary to determine if this hypothetical nurse, despite the "welter" of circumstances surrounding this one shift, was paid for all hours worked. Further, because this Court would not need to interpret the CBA in the case of what defendants must believe is their strongest, though unlikely, example, the Court will not need to interpret the CBA for any of the plaintiffs and the case should be remanded.

Despite being equipped with the force of complete preemption, LMRA preemption is a narrow doctrine that "should not be lightly inferred." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 412 (1988) (quoting *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 21 (1987)). Rather, the only circumstances which require preemption is when interpretation of the CBA is necessary. *See generally Lingle*, 486 U.S. at 403-07; *Lydon v. Boston Sand & Gravel Co.,* 175 F.3d 6, 10-13 (1st Cir. 1999).

Defendants contend that interpretation will be necessary to determine liability in their hypothetical due to the mere existence of provisions in the CBA governing pay and time worked. However, "parallelism" does not invoke preemption of the state law. *Lingle,* 486 U.S. at 408.

---

working on a holiday, as well as provisions governing pay for time not actually worked, such as 'on-call' time and time spent attending meetings on behalf of the union." *See* Defendants' Response at 8-10 (internal citations omitted).

Therefore, the similarities between the CBA provisions and Massachusetts wage and hour laws do not mandate preemption.

For example, defendants refer to the provisions in the CBA requiring a rest break after an employee has worked a certain number of hours. *See* Defendants' Response at 8 (internal citations omitted). Additionally, defendants claim that the CBAs **generally** provide that the employees will be paid for work performed during their breaks. *See* Defendants' Response at 8.

However, defendants fail to mention that Mass. Gen. Laws ch. 149 § 148 mandates that an employer pay an employee "the wages earned by him," within a specified number of days from the end of the pay period. Therefore, any work performed by plaintiffs and class members must be paid to them whether or not the CBA has a specific provision or not – the CBA has absolutely nothing to do with whether employees were properly paid under the statute.

Even so, assuming for a moment that in some instances, pursuant to the provision of the CBA, employees are not paid for certain work performed during scheduled breaks. Defendants would argue that the CBAs would need to be interpreted in order to determine whether the work performed during such breaks is compensable work. However, the CBAs cannot be at odds with state law. *See Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994) ("§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law") (internal citations omitted). Therefore, the CBAs would not need to be consulted or interpreted because the obligation to pay employees all wages earned is a nonnegotiable right as a matter of state law – it does not matter what the CBA says on the issue.

Turning next to the "welter of CBA provisions" governing the rate at which employees are paid, defendants' argument again fails as a matter of law. It has been well established by the Supreme Court that mere reference or even consultation of the CBA does not mandate

preemption. *See Livadas,* 512 U.S. at 124 (*citing Lingle*, 486 U.S. at 413, n.12) ("We were clear [in *Lingle*] that when the meaning of contract terms is not the subject of dispute, the bare fact that a collective bargaining agreement will be consulted in the court of state-law litigation plainly does not require the claim to be extinguished.").

More importantly, "a collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled" without requiring preemption. *Lingle,* 486 U.S. at 413 n.12 (internal citations omitted).

Take for example, the hypothetical nurse provided by defendants as an example that would require interpretation of multiple provisions of the CBAs. This particular nurse, according to defendants, was on call on a holiday the day after attending meetings as a union representative. *See* Defendants' Response at 10. She reported to work after receiving a call, but reported to work in a different job classification, and was required to work through one or more scheduled shifts. *Id.* Because of the length of her shift, she was entitled to daily and weekly overtime under the CBA. *Id.*

Defendants, hoping to create enough complication to suggest that interpretation "must" be required, have omitted from their example the only facts actually necessary to determine whether the nurse is owed damages under Massachusetts statutory wage and hour law – the number of hours she worked that shift, and whether she was paid for all those hours. Again, what the CBA says matters not.

Now, consider this version of our hypothetical nurse's day: The day after attending meetings as a union representative, a nurse is on call and it is Christmas Day. Sadly, she receives a call from the hospital asking her to report to work as soon as possible. The nurse

arrives at the hospital at 10:15 am and immediately starts working in a different job classification than her normal position. Because she was faced with an emergency as soon as she arrived, she was unable to clock in until 11:00 am. Due to stormy weather and a much anticipated Patriots home game, the hospital has an increase of patients coming in and the nurse is required to work through two unscheduled shifts. She clocks out to go home at 8:45 pm. She is tired and hungry because despite the length of her shift she was too busy to take a meal break, let alone grab a bite of food. However, due to the hospital's Automatic Meal Break Deduction Policy, the nurse knew she would have a half hour taken from her hours. As she is leaving the hospital, in comes a new emergency and she is paged back to the floor before she has even made it out of her department. There is no time for her to clock back in, so she goes immediately to the emergency. Finally, at 10:30 pm, she gets in her car and is able to return home to her family for the last hour of Christmas Day. Because of the number of hours she worked that day, the nurse was entitled to both daily and weekly overtime.

      The only facts that matter in connection with the nurse's wage and hour claim pursuant to Massachusetts statutory law is the information regarding her hours worked and her hours paid, which defendants conveniently left out of their version of the hypothetical. In this example, the nurse was only paid for 9.25 hours of work, even though she worked a total of 12.25 hours. It does not matter at this point what the CBAs say regarding what qualifies as work because Mass. Gen. Laws 149 § 148 requires employers to pay their employees all wages earned. Our hypothetical nurse earned 12.25 hours worth of pay, but was only paid for 9.25 hours. Therefore, the hospital is liable to the nurse for unpaid wages.

      Now that liability has been determined, the next question is how much money the nurse is owed. However, this is purely a question of damages, and as discussed earlier, does not result in

preemption if the CBAs must be consulted. *See Lingle,* 486 U.S. at 413 n.12. This is also where all of the factors in our hypothetical imposed by defendants come into play. The fact that the nurse: (1) was on call; (2) on a holiday; (3) after attending meetings as a union representative the day before; (4) reported to work in response to a call; (5) to work in a different job classification; (6) and continued to work through one or more unscheduled shifts; (6) such that the nurse was entitled to daily and weekly overtime, only effects the rate of pay to be used to determine the amount owed to the nurse for the 3.0 hours she worked but was not paid.

In fact, defendants themselves admit that the "welter" of CBA provisions exampled in their hypothetical all govern "the **rate** at which the employees are **paid**." *See* Defendants' Response at 9 (emphasis added). And the rate at which an employee is paid is relevant only to damages, and does not mandate preemption. *See Lingle,* 486 U.S. at 413 n.12. ("A collective-bargaining agreement may, of course, contain information such as **rate of pay** and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.") (emphasis added).

Therefore, defendants have provided the Court with a prime example, albeit absent some key facts, of how the provisions of the CBA will not need to be interpreted, and that removal was improper.

## CONCLUSION

Because defendants have failed to meet their burden of proving the facts necessary to support removal to federal jurisdiction, plaintiffs respectfully request that their motion to remand be granted, and this action of Massachusetts state statutory and common law causes of action be remanded to state court.

Dated: December 15, 2009

                                              Respectfully submitted,
ELIZABETH MANNING, et al.,
and all others similarly situated

By their attorneys,

*/s/ Jody L. Newman*
Jody L. Newman (BBO No. 542264)
Ariatna Villegas-Vazquez (BBO No. 655249)
DWYER & COLLORA, LLP
600 Atlantic Avenue
Boston, MA 02210-2211
(617) 371-1000
jnewman@dwyercollora.com
avillegas-vazquez@dwyercollora.com

## REQUEST FOR ORAL ARGUMENT

Plaintiffs respectfully request an oral argument on their Motion to Remand.

Dated: December 15, 2009                             */s/ Jody L. Newman*

## CERTIFICATE OF SERVICE

    I hereby certify that this document has been filed through the ECF system, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: December 15, 2009                             */s/ Jody L. Newman*