## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**ELIZABETH MANNING, LISA RIVERS and
RHONDA WILLIAMS,**
*on behalf of themselves and all other employees
similarly situated,*

                                        *Plaintiffs,*

            **v.**

**BOSTON MEDICAL CENTER CORPORATION,
BOSTON REGIONAL MEDICAL CENTER, LLC,
BOSTON REGIONAL MEDICAL CENTER, INC.,
ELAINE ULLIAN and JAMES CANAVAN, et al,**

                                        *Defendants.*

Civil Action No.
09-cv-11724

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

**PRELIMINARY STATEMENT**

Plaintiffs submit this memorandum of law in opposition to defendants' motion to dismiss plaintiffs' claims arising under Massachusetts state wage and hour law and common law. Also pending before the Court is plaintiffs' motion to remand this action, consisting of state law claims, to the Massachusetts Superior Court. Plaintiffs' respectfully request that defendants' motion be dismissed in its entirety.

**FACTS**

Plaintiffs filed this action against defendants for violations of state statutory and common laws due to defendants' failure to compensate plaintiffs for all time worked.

In particular, defendants maintain at least three policies which deprive employees' compensation for time worked. First, defendants maintain the "Meal Break Deduction Policy," by automatically deducting half an hour of time from each employee for a meal break, and failing to ensure that employees receive their breaks. *See* Docket No. 1, Exhibit 1, Complaint ("Complaint") ¶¶ 73, 74. Employees often perform work during their breaks and thus should be compensated for such time. *See* Complaint ¶ 75. Second, employees perform work before and after their shifts for which they receive no compensation due to defendants' policies. *See* Complaint ¶¶ 93, 94. Third, although employees are suffered or permitted to attend training sessions, defendants fail to compensate employees for such time. *See* Complaint ¶¶ 97, 98.

As a result of defendants' actions, plaintiffs have claims for: (1) violations of Mass. Gen. Laws ch. 149 §§ 148, 150 and Mass. Gen. Laws ch. 151 §§ 1A, 1B, because plaintiffs perform work for defendants without pay for all time worked;[1] (2) breach of contract, express and implied, due to the contractual relationship and due to the on-going dealings and course of conduct between defendants and their employees, which defendants breached by failing to compensate the employees for all of the time they worked for defendants;[2] (3) conversion, because the wages were due to employees as of the time the labor and services were performed

---

[1] *See* Complaint ¶¶ 73-74, 91, 93-95, 97-99.
[2] *See* Complaint ¶¶ 106-123.

and defendants kept such wages;[3] (4) quantum meruit/unjust enrichment, because plaintiffs performed work and defendants failed to pay employees for the reasonable value of such services;[4] (5) fraud and misrepresentation, as a result of defendants representing that they would pay wages to their employees in accordance with their legal obligations, but intending to violate the law by failing to pay such wages;[5] (6) money had and received in assumpsit, because defendants have retained benefits  by not compensating plaintiffs for work performed;[6] (7) failure to keep accurate records, because defendants failed to accurately record and maintain all compensable work performed by plaintiffs;[7] and (8) estoppel, due to defendants telling plaintiffs that they did not have to be paid for time deducted pursuant to the Break Deduction Policy and concealing from plaintiffs their rights.[8]

Because plaintiffs have set forth plausible allegations in their complaint for each cause of action, defendants' motion to dismiss is due to be denied.

**I.    PLAINTIFFS' COMPLAINT PROVIDES SUFFICIENT DETAIL TO MEET THE APPLICABLE PLEADING STANDARDS**

Defendants seem to suggest that the filing of similar lawsuits in other states by plaintiffs' counsel provides a basis for dismissal.  Setting aside that similar factual pleadings are not grounds for dismissal, defense counsel ignores their own admission, in its Health Care Update newsletter, that "many health care employers use electronic time and attendance systems that make these automatic deductions and it is not uncommon for health care employees to forego meal periods."  *See* Affirmation of Jody Newman, sworn to December 18, 2009 ("Newman Aff."), attached as <u>Exhibit A</u>, Seyfarth Shaw LLP's "Health Care Update" at 5 (April 2009). Defendants further advise health care employers of the "need to take steps to ensure that they are in full compliance with all wage and hour laws."  *Id.*  Of course, given that the same policies are

---

[3]    *See* Complaint ¶¶ 113, 114, 127-134, 154.
[4]    *See* Complaint ¶¶ 131-140.
[5]    *See* Complaint ¶¶ 141-155.
[6]    *See* Complaint ¶¶ 135-136.
[7]    *See* Complaint ¶¶ 102, 156, 194.
[8]    *See* Complaint ¶¶ 124-126, 141, 143, 152.

in effect throughout the health care industry, the pleadings would be similar in such cases.

### A.    MOTIONS TO DISMISS ARE RARELY GRANTED

Plaintiffs' complaint states valid claims against the defendants for violations of Massachusetts' statutory and common law and dismissal is not warranted.  In order to survive a motion to dismiss, a complaint must merely plausibly suggest the conclusion that defendants violated the law.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-556 (2007) (holding that to state a claim of conspiracy under the Sherman Act, complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made").  A complaint need not contain "detailed factual allegations" but must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Id*. at 555 (citation omitted).  All that plaintiffs must do in the complaint is state legally feasible claims—which they have clearly done.  *See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 36 (1st Cir. 2001) ("The purpose of a motion to dismiss 'is to determine whether the complaint alleges facts sufficient to state a cause of action.'") (quoting *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir.1998)).

Rather, the "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly,* 550 U.S. at 554 (internal citations and emphasis omitted).  Plaintiffs are merely required to "nudge[] their claim across the line from conceivable to plausible." *Id.* at 570.  Accordingly, prior to discovery, dismissal of a complaint is premature.

### B.    Plaintiffs' Statutory Wage Claims are Sufficiently Plead

Defendants argue that plaintiffs have failed to sufficiently plead their state statutory claims to meet the low standard set by *Twombly*.  However, plaintiffs have plead sufficient detail "to state a claim to relief that is plausible on its face." *Id.*

Defendants correctly state that in order "[t]o succeed on a claim under the Wage Act (Count I), Plaintiffs must show that BMC failed to pay for all hours worked, and to succeed

under the Minimum Wage Law (Count II), Plaintiffs must show that they worked more than forty hours per week and did not receive overtime pay." *See* Defendants' Memorandum in Support of Motion to Dismiss ("Memo in Support") at 8. Thereafter, however, defendants stray from the pleading standard by suggesting plaintiffs are required to plead facts that would far exceed plaintiffs' low burden at this state of litigation. *See Twombly,* 550 U.S. at 554 (plaintiffs are merely required to "give the defendant fair notice of what the … claim is and the grounds upon which it rests.") (internal citations omitted).

In support of their argument, defendants rely on two cases easily distinguishable from the present case. First, defendants cite *Zhong v. August Corp.,* to suggest that the complaint must allege facts such as the approximate number of hours worked but not paid. *See* Memo in Support at 8 (quoting *Zhong,* 498 F. Supp. 2d 625, 630 (S.D.N.Y. 2007)). However, in *Zhong*, the complaint was dismissed because the plaintiff failed to provide this information *coupled with* a fatal "internal conflict" in his complaint. *Zhong*, 498 F. Supp. 2d at 630. Zhong had alleged that his regular work schedule added up to only twenty hours per week, and therefore, the court found the plaintiff could not possibly meet his burden of alleging failure to pay overtime. *Id; see also Gordon v. Kaleida Health,* N. 08-CV-378S, 2008 WL 5114217, at *4 (W.D.N.Y. Nov. 25, 2008) (rejecting defendants' reliance on *Zhong* to support their argument that plaintiffs had failed to sufficiently plead federal and state claims for failure to pay wages and overtime owed).

The other case relied on by defendants, *Bailey v. Border Foods, Inc.,* is also distinguishable because it is a case for failure to pay minimum wage, not unpaid wages and overtime. No. 09-1230, 2009 WL 3248305 (D. Minn. Oct. 6, 2009). In *Bailey,* the court held that the plaintiffs' failure to include the numbers of hours worked, as well as their rate of pay, was a fatal flaw because the court was unable to determine if the plaintiffs' hourly wage fell below the statutory minimum wage. *Id.* at *2. Therefore, the claim was dismissed because the complaint failed to state a claim for violation of minimum wage. *Id.*

However, in *Gordon v. Kaleida Health,* a case nearly identical to here, the court held that

the plaintiffs sufficiently plead their state and federal overtime and unpaid wages claims because the plaintiffs "explicitly allege[d] that they worked more than 40 hours per week." 2008 WL 5114217, at *4 (W.D.N.Y. Nov. 25, 2008). The court also noted that the "Plaintiffs d[id] not allege a variety of individual, isolated instances where they stayed late, but rather contend[ed] that three sustained policies, which were executed over a specific period of time, denied them overtime compensation." *Id*. Additionally, plaintiffs' allegations in the complaint did not "contain a fatal contradiction between their legal claim and their pleadings," like that in *Zhong,* and plaintiffs identified three "specific employment practice[s] giving rise to their claim." *Id.* Accordingly, the court held that plaintiffs satisfied the pleading obligations for alleging an unpaid wages and overtime wage claims.

Similarly, the court in *Acho v. Cort,* held that pleading requirements to state a claim for an alleged FLSA violation are "simple and straightforward." No. C 09-00157, 2009 WL 3562472, at *2 (N.D. Cal. Oct. 27, 2009). "In order to plead sufficient facts [under the FLSA], the plaintiff must indicate facts supporting the following: (1) defendant was plaintiff's employer; (2) plaintiff worked more than forty hours in a week; and (3) plaintiff did not receive compensation for his employment in excess of the forty hours." *Id.* Additionally, the court held that a plaintiff is not required to "plead specific instances of unpaid overtime before being allowed to proceed to discovery" because it is the employer who is obligated to maintain such employment records containing the information. *Id.* at *3.

Plaintiffs have clearly met the pleading requirements set forth in *Acho*. Despite defendants' contention to the contrary, plaintiffs have identified that they and class members were employed by defendants. *See* Complaint ¶¶ 1, 13, 61, 66. Likewise, plaintiffs have sufficiently plead that defendants failed to pay them for all hours worked, thus putting defendants on notice of their Wage Act claims. *See* Complaint ¶¶ 63, 72, 89, 94, 98, 102, 111. Further, plaintiffs have sufficiently plead that they worked more than forty hours in a week and that defendants failed to pay them at premium rates. *See* Complaint ¶¶ 63, 91, 95, 99, 111.

- 5 -

These allegations alone are enough to put defendants on "fair notice" of the claims brought against them as required by *Twombly*. However, like the plaintiffs in *Gordon*, plaintiffs went further, and alleged in their complaint the existence of "three sustained policies" which denied plaintiffs of compensation, including premium pay. *See* Complaint ¶¶ 72, 73-92 ("Meal Break Deduction Policy"), 93-96 ("Unpaid Preliminary and Postliminary Work Policy"), 97-101 ("Unpaid Training Policy").

Therefore, defendants cannot claim that plaintiffs failed to provide sufficient notice because plaintiffs have provided more than sufficient detail to "nudge[] their claims across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570. Accordingly, defendants' motion to dismiss plaintiffs' statutory claims should be dismissed.[9]

---

[9] Defendants also argue that plaintiffs' have failed to plead a plausible claim for failure to keep accurate records because they have not plead that records were ever requested, or that defendants failed or refused to produce such records. *See* Memo in Support at 10 n. 16. However, plaintiffs' claims arise out of defendants' failure to keep accurate records, not their failure to produce them. It is well recognized in Massachusetts that a statutory duty creates a duty of care toward the class of persons that the statute is designed to protect. *Gabriel v. Borowy*, 85 N.E.2d 435, 439 (Mass. 1949) ("Where a statutory right is conferred upon a class of individuals as a class distinguished from the public at large, but no remedy is provided by the statute for the enforcement of that right, the right may be asserted by any appropriate common law remedy that is available."). Thus, when a plaintiff suffers damages as a result of a defendant's violation of such a statute, the plaintiff may recover even if the statute itself does not include a private cause of action. *See, e.g.*, *Ludlow Educ. Ass'n v. Town of Ludlow*, 644 N.E.2d 227, 231 (Mass. App. Ct. 1991) (allowing plaintiffs to recover for the violation of a statute even though the statute itself did not create any private right of action); *Molinari v. Royal Heights Const. Co.*, No. 934424, 1998 WL 1181667, at *4 (Mass. Super. Sep. 8, 1998) (finding that negligence is "an appropriate common law remedy" to recover for injuries caused by violating a regulation). Otherwise the protections of the statute "would be useless and illusory." *Gabriel*, 85 N.E.2d at 439. It is undisputed that Mass. Gen. Laws ch. 151, § 15 places a statutory duty upon employers to keep and maintain records of all their employees' hours worked. Mass. Gen. Laws ch. 151, § 15 ("Every employer shall keep a true and accurate record . . . of the hours worked each day and each week by each employee . . ."); *see also Wiedman v. Bradford Group*, 831 N.E.2d 304, 309 (Mass. 2005). This statute protects employees by ensuring that they are paid for all the hours they work, and by providing evidence they can use to prove a claim for unpaid wages. *Weidman*, 831 N.E.2d at 309-311. Here, plaintiffs' have clearly alleged that Defendants violated the statute, Complaint ¶¶ 156, that they thus breached their duty toward Plaintiffs, *id.* ¶ 193, and that Plaintiffs suffered damages and a direct and proximate cause

## C.    Plaintiffs' Contract Claims are Sufficiently Plead

Defendants also argue that plaintiffs have failed to plead sufficient facts to allege claims for breach of contract.  Again, plaintiffs have provided sufficient detail in the complaint to put defendants on notice of the claims for breach of contract.

As defendants acknowledge, to state a claim for breach of contract, a plaintiff must allege the existence of a contract, that defendants breached their duties under the contract, and that the breach caused the plaintiffs' damage.  *Moghaddam v. Dunkin' Donuts, Inc.,* 295 F. Supp. 2d 136, 139 (D. Mass. 2003) (internal quotations omitted); *see also Guckenberger v. Boston Univ.,* 957 F. Supp. 306, 316 (D. Mass. 1997).  Plaintiffs have alleged sufficient detail to meet this standard. First, plaintiffs have clearly alleged the existence of a contract in the complaint, as well as the purpose and terms of the contract.[10]  Second, plaintiffs clearly identified that "defendants and Plaintiffs and Class Members entered into a contract for employment."[11]  *See* Complaint ¶ 106.

Third, plaintiffs have sufficiently alleged defendants' breach under the contract.  As previously stated, defendants' duties under the contract were to pay plaintiffs for the wages agreed upon, and legally required, in exchange for all time worked by plaintiffs.  *See* Complaint

---

of Defendants failure to maintain records, *id.* ¶ 194, *see also id.* ¶ 102.  They have thus stated a cause of action for negligence based on Defendants' breach of their duty to maintain accurate records of the hours their employees worked.

[10]    *See* Complaint ¶ 106 ("By entering into an employment relationship, defendants and Plaintiffs and Class Members **entered into a contract** for employment, including implied contracts and express contracts.") (emphasis added);  ¶ 107 (the agreement was "explicitly intended to order and govern the employment relationship.");  ¶ 109 (the terms included that "defendants promised to compensate Plaintiffs and Class Members for 'all hours worked' during their employment period."); *see also id.* ¶ 108 ("This binding express contract provided that Plaintiffs and Class Members would provide services and labor to defendants in return for compensation under the provisions of the contract."); ¶ 110 ("defendants' express contract with Plaintiffs and Class Members embodied all binding legal requirements concerning the payment of such wages to the Plaintiffs and Class Members that were in force at the time of that contract"); ¶ 116 ("defendants contracted to hire Plaintiffs and Class Members at a set rate of pay, with a set work schedule for a particular position, under set terms of employment").

[11]    The complaint further defines "defendants" as "the Named Defendants, the Health Centers, and the Affiliates."  *Id.* ¶ 7.  Likewise, "Plaintiffs" and "Class Members" have also been defined in the complaint.  *Id.* ¶¶ 60-61.

¶¶ 108, 109, 110. Defendants "breached the express and/or implied contract terms by failing to pay Class Members for all of the time Class Members worked … including applicable premium pay." *See id.* ¶ 120; *see also* ¶ 111 ("Plaintiffs and Class Members regularly worked hours both under and in excess of forty per week and were not paid for all of those hours."). Further, plaintiffs specify the time worked for which defendants failed to compensate plaintiffs. *See id.* ¶ 112 ("The defendants failed to pay for time that Plaintiffs and Class Members worked, including, but not limited to, during their meal breaks, time that Plaintiffs and Class Members spent in required, job-related training, and time that Plaintiffs and Class Members spent before and after their regular work hours performing work-related tasks.").

Finally, plaintiffs sufficiently allege that because of defendants' breach, plaintiffs suffered damages. Specifically, plaintiffs allege that "[a]s a result of defendants' breach of express and implied contracts, Plaintiffs and Class Members have been harmed and as a direct and proximate result have suffered damages including all amounts they should have been paid for all time worked including applicable premium pay." *See* Complaint ¶ 120; *see also* ¶ 113 ("defendants have received financial gain **at the expense of** Plaintiffs and Class Members") (emphasis added). Defendants, in their Memo in Support, have conveniently left out the factual allegations providing them with "fair notice" of the claims for breach of contract, along with the grounds upon which those claims rest.[12] Because plaintiffs have met the burden under *Twombly,* defendants' motion to dismiss plaintiffs' breach of contract claims should be denied.

### D.    Plaintiffs' Fraud and Conversions Claims Sufficiently Plead the Necessary State of Mind

In order to state a claim for conversion, plaintiffs must allege that defendants "did some positive wrongful act with the intention to appropriate the property to himself." *Kelley v.*

---

[12]    Plaintiffs have also provided sufficient details to support their claims for breach of implied contracts, including the terms of the implied contract, the duties of both parties under the implied contract, defendants' breach of the implied contract, and the damages suffered by plaintiffs because of defendants' breach of the implied contract. *See* Complaint ¶¶ 115-120.

*LaForce,* 288 F.3d 1, 12 (1st Cir. 2002) (internal quotations omitted). Similarly, to plead fraud, plaintiffs must show that defendants "knowingly made a false statement of material fact ..." *Chan v. Chen,* 872 N.E.2d 1153, 1157 (Mass. App. Ct. 2007) (internal citations omitted). Plaintiffs have met their burden under *Twombly* in regards to the necessary state of mind for both conversion and fraud.

In their complaint, plaintiffs allege throughout that defendants, in their dealings with plaintiffs, knowingly and intentionally reaped benefits by failing to compensate plaintiffs for all time worked.[13] In fact, plaintiffs specified that there was not even a reasonable basis that defendants could believe that they did not intend to defraud or convert plaintiffs' wages because "defendants had a continuing policy and practice of failing to pay their employees for all compensable time, including applicable premium pay."[14] *See* Complaint ¶ 154.

Additionally, plaintiffs sufficiently plead that defendants' agents had the requisite state of

---

[13]    *See* Complaint ¶ 82 ("Defendants **know** that Plaintiffs and Class Members perform work during their meal breaks.") (emphasis added); ¶ 86 ("the defendants **affirmatively stated** that the employees could not be paid for such time, even though defendants **knew** such time was compensable") (emphasis added); ¶ 87 ("defendants' management **knew** that … Plaintiffs and Class Members had to work through their meal breaks even during times they were not paid") (emphasis added); ¶ 88 ("Even though defendants **know** its employees are performing such work, defendants fail to compensate") (emphasis added); ¶ 128 ("defendants **knowingly, unlawfully and intentionally** took, appropriated and converted…") (emphasis added); ¶ 134 ("Defendants had an **appreciation or knowledge** of the benefit conferred by these Plaintiffs and Class Members") (emphasis added); ¶ 143 (defendants "**deliberately** concealed from its employees that they did not receive compensation for all compensable time") (emphasis added); ¶ 145 ("defendants **deliberately** misrepresented to Plaintiffs and Class Members that they were being properly paid for compensable time") (emphasis added); ¶ 148 ("Defendants **intended** for Plaintiffs and Class Members to rely upon defendants' misrepresentation that they would be paid for all compensable time") (emphasis added); ¶ 149 ("Defendants … at all times **intended** to violate applicable Massachusetts laws by failing to pay Plaintiffs and Class Members for all compensable time") (emphasis added).

[14]    Despite defendants' assertions to the contrary, this allegation also supports that at the time defendants made the false statements to plaintiffs, defendants did not intend to carry out the promise because they had a continuing practice and policy of not paying employees for all time worked. *See* Complaint ¶ 148; *see also* ¶¶ 149, 154.

mind.[15]    Further, plaintiffs specifically allege that the individual defendants are "actively involved in the creation of the illegal policies complained of in this case" and "actively participate[] in the violations complained of in this action."  *See* Complaint ¶¶ 35, 58.  Plaintiffs also specify that defendants' management had the requisite knowledge for fraud and conversion. *See* Complaint at ¶¶ 84, 85, 86, 87, 134.

Again, plaintiffs have met the *Twombly* pleading standard, therefore their claims for fraud and conversion should not be dismissed.[16]

---

[15]    Defendants purport that plaintiffs have made no factual allegations about "any identifiable person's requisite state of mind."  *See* Memo in Support at 12.  However, defendants, once again seem to forget that throughout the complaint, "defendants" refers to all Named Defendants, which includes two individuals, as well as the Health Centers and the Affiliates.  *See* Complaint ¶ 7.

[16]    Once again, defendants assert a completely separate argument concerning one of plaintiffs' claims in a footnote, arguing that plaintiffs' conversion claim cannot succeed because it seeks to recover money.  *See* Defendants' Memo in Support at 12 n.20.  However, the Massachusetts Supreme Judicial Court held almost a century ago, and confirmed as recently as two years ago that "[m]oney may be the subject of conversion." *In re Hilson*, 863 N.E.2d 483, 491 (Mass. 2007) (citing *Morring v. Manning*, 91 N.E. 308, 309 (Mass. 1910)).  Defendants cite *Gossels v. Fleet National Bank*, 902 N.E.2d 370 (Mass. 2009) for the proposition that a debt cannot be converted.  That proposition, however, is not on point in this case.  *Gossels* was a check cashing dispute where a bank failed to pay an account holder.  Because a bank account creates an ordinary creditor-debtor relationship, an account holder is entitled only to "a corresponding sum" rather than to a "specific fund."  *See Freeman's Nat'l Bank v. Nat'l Tube-Works, Inc.*, 24 N.E. 779, 780 (Mass. 1890).  For this reason, the court held that money from a bank account cannot be converted.  *Gossels*, 902 N.E.2d at 378.  The employment relationship, by contrast, is not an ordinary debtor-creditor relationship.  Under Massachusetts law, an employee's earned wages belong unconditionally to the employee, and unlike an ordinary debt, a failure to pay wages carries both civil and criminal penalties.  *See* Mass. Gen. Laws ch. 149, § 148 (providing that employers must pay all earned wages to the employee within six days of the end of the pay period in which they are earned).  The policy behind these provisions is "to protect wage earners from the long-term detention of wages by unscrupulous employers."  *Cumpata v. Blue Shield of Mass., Inc.*, 113 F. Supp. 2d 164, 167 (D. Mass. 2000).  The fact that an employee's right to his wages is unwaivable is further evidence of Massachusetts' strong policy to protect wage earners. *See* Mass. Gen. Laws ch. 149, § 148 ("No person shall by a special contract with an employee or by any other means exempt himself from this section.").  This policy reflects the fact that wages are not an ordinary debt like a bank account.  Rather, once wages are earned, the amount earned is a "specific fund" that belongs to the employee and can be recovered in conversion.  *Accord Doo Nam Young v. ACBL Corp.*, 427 F. Supp.2d 327,

### E. Plaintiffs' Fraud and Negligent Misrepresentation Claims are Plead with Enough Detail to Meet the Heightened Pleading Standard under Rule 9

Defendants also claim that the plaintiffs' fraud and misrepresentation claims are not plead with sufficient particularity to meet the heightened requirement of Rule 9(b).

Although Rule 9(b) requires that the claim must be pled "with sufficient particularity," "Rule 9(b) … is to be harmonized with Rule 8(a)(2), … which provides for a 'short and plain statement of the claim.'" *Howard v. Cycare Sys., Inc.,* 128 F.R.D. 159, 164 (D. Mass. 1989); *see* Fed. R. Civ. P. 9(b); Fed. R. Civ. P. 8(a)(2); *see also Zahn v. Yucaipa Capital Fund,* 218 B.R. 656, 673 (D.R.I. 1998) ("Rule 9(b) … does not exist in a vacuum.  Rather, it must be read in harmony with Fed. R. Civ. P. 8, which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.") (internal citations omitted).

The "plaintiff's burden of proof does not require him to prove his case in the Complaint." *Zahn,* 218 B.R. at 674.  "There would be no harmony between the two rules if a plaintiff, in order to comply with Rule 9(b), had to list every time and place at which a specific misrepresentation was repeated." *Howard,* 128 F.R.D. at 164.  Rather, the plaintiff "need only set forth allegations of fact sufficient to place defendants on notice of the claims against them, allow them to prepare a defense, and allay any concerns about reckless allegations of fraud." *Zahn,* 218 B.R. at 674. (internal citations omitted).  And though plaintiffs are required to state the circumstances constituting fraud with particularity, "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

---

341 (S.D.N.Y. 2005) (holding that unlawfully withheld wages are an "identifiable fund" that can be recovered in conversion); *Ocean Club Cmty. Ass'n v. Curtis*, 934 So. 2d 522 (Fla. Dist. Ct. App. 2005) (affirming a judgment of conversion for earned and unpaid wages); *Duplisse v. Devino*, No. 158151, 2005 WL 1391107, at *7 (Conn. Super. Ct. May 9, 2005) (finding that plaintiffs proved the elements of conversion based on a claim for unpaid wages), *aff'd on other grounds* 902 A.2d 30 (Conn. App. 2005); *Giles v. Gen. Motors Corp.*, 802 N.E.2d 858, 866 (Ill. App. Ct. 2003) (reversing dismissal of a conversion claim based on unlawfully withheld wages).  Consistent with this understanding, no Massachusetts court has ever held that wages cannot be converted.  They have thus failed to carry their burden and their motion must be denied on this ground as well.

Defendants argue that plaintiffs have not plead their fraud claim with sufficient particularity. As stated above, to state a cause of action for fraud, a plaintiff must show that "the defendant has knowingly made a false statement of material fact, intending that the plaintiff rely thereon, and upon which the plaintiff did rely." *Chan*, 872 N.E.2d at 1157 (internal citations omitted).

Defendants contend that plaintiffs have failed to identify the specific content of the misrepresentation, as well as the speaker, the specific time and place that the misrepresentations were made. Defendants' Memo in Support at 13. Defendants are plainly mistaken. Plaintiffs identified the fraudulent scheme defendants engaged in to conceal the truth from plaintiffs. *See* Complaint ¶ 88 ("Even though defendants know its employees are performing such work, defendants fail to compensate their employees for such work."). The Complaint further alleges that defendants "at all times intended to violate applicable Massachusetts laws by failing to pay Plaintiffs and Class Members for all compensable time, including applicable premium pay." *See* Complaint ¶ 149. Defendants "deliberately concealed from its employees that they did not receive compensation for all compensable time and misled them into believing they were being paid properly." *See* Complaint ¶ 143. They then, "by maintaining and propagating the illegal policies, deliberately misrepresented to Plaintiffs and Class Members that they were being properly paid for compensable time, even though Plaintiffs were not receiving pay for all compensable time." *See* Complaint ¶ 145; *see also* Complaint ¶¶ 141-142, 148, 150, 154. Thus, by identifying and recounting defendants' scheme, defendants are sufficiently informed of plaintiffs' claims and therefore fully able to prepare their defense.

In addition, plaintiffs specifically identified the statements made to them by defendants. *See* Complaint ¶ 86 ("When questioned by employees about the Meal Break Deduction Policy, the defendants affirmatively stated that the employees could not be paid for such time, even though defendants knew such time was compensable."). Defendants made further misrepresentations to employees "through their corporate publications and through statements of

their agents" that "wages would be paid legally and in accordance with defendants' obligations pursuant to applicable Massachusetts laws." *See* Complaint ¶ 146. Further, plaintiffs identify individually liable defendants likely to have been involved with the fraud and misrepresentations. *See* Complaint ¶¶ 14-36, 37-59.

Finally, courts do not require plaintiffs to fully allege every instance that was part of defendants' fraudulent scheme, thus plaintiffs are not required to plead every instance of fraudulent conduct in the Complaint. *See In re Pharm. Indus. Average Wholesale Price Litig.,* 478 F. Supp.2d 164, 171-72 (D. Mass. 2007) ("an alleged scheme of fraud may involve numerous transactions that occur over a long period of time, and pleading the precise specifics with regard to every instance of fraudulent conduct may be impractical") (internal citations omitted); *Howard,* 128 F.R.D. at 164 ("There would be no harmony between the two rules if a plaintiff, in order to comply with Rule 9(b), had to list every time and place at which a specific misrepresentation was repeated. Lastly, I do not see a violation of Rule 9(b) in the failure of the plaintiff to identify the specific agent of the defendant who made each misrepresentation … none of the First Circuit cases indicate that such identification is a prerequisite to compliance with Rule 9(b)"). Therefore, plaintiffs have met the heightened pleading requirement for their fraud and misrepresentation claims.

> **F.    Plaintiffs' Misrepresentation and Estoppel Claims Sufficiently Plead and Identify the Relied Upon Promise**

Similarly, plaintiffs' claims for misrepresentation and estoppel provide sufficient detail and identify the relied upon promises made by defendants. In arguing that plaintiffs have failed to sufficiently plead the existence and reliance of representations and promises made by defendants, defendants seem to have made no effort to read the complaint in its entirety, and provide the Court with an inaccurate depiction of plaintiffs' complaint. *See* Defendants' Memo in Support at 14-15.

However, plaintiffs have alleged that defendants "made clear definite promises to Plaintiffs and Class Members that they would be paid for all hours worked including applicable

premium pay in accordance with the applicable Massachusetts laws." *See* Complaint ¶ 124.  To wit, "when defendants hired Plaintiffs and Class Members, they represented to Plaintiffs and Class Members that they would be fully compensated for all services performed." *See id.* ¶ 151.  Further, plaintiffs specifically allege that "[t]hrough the paystubs and payroll information it provided employees, [defendants] deliberately concealed from its employees that they did not receive compensation for all compensable time and misled them into believing they were being paid properly." *See id.* ¶ 143.  Plaintiffs also allege, with specificity, that defendants made further representations through their "corporate publications and through statements of their agents," as well as in their "employee manuals and policy manuals" that plaintiffs would be paid legally and for all hours worked to the benefit of defendants. *See id.* ¶¶ 146, 147.  Likewise, plaintiffs have provided sufficient detail that plaintiffs not only relied on, but reasonably relied on the representations and promises made by defendants.[17]

Therefore, plaintiffs have once again plead the facts necessary to sufficiently allege claims for misrepresentation, equitable estoppel and promissory estoppel.

### G.    Plaintiffs' Money Had and Received and Quantum Meruit Claims are Sufficiently Plead

Plaintiffs' claims for unjust enrichment and money had and received are also sufficiently plead under the *Twombly* standard.  For their unjust enrichment claims, plaintiffs must show that the defendant has been "unjustly enriched" resulting in "unjust detriment" to the plaintiff.

---

[17]    *See also* Complaint at ¶¶ 125 ("Plaintiffs and Class Members relied on this promise. Without such a promise of being paid for all hours worked, Plaintiffs and Class Members would not have worked for [defendants]."), 126 ("Plaintiffs and Class Members acted to their substantial detriment in reasonable reliance on defendants' promise to pay them for wages and benefits earned."), 132 ("Plaintiffs and Class Members provided their services with the reasonable expectation of receiving compensation from the defendants."), 150 ("Plaintiffs and Class Members justifiably relied on the misrepresentations in agreeing to accept and continue employment with defendants.  This reliance was reasonable …"), 154 ("Plaintiffs and Class Members relied upon defendants' representation by performing work and services for defendants.  This reliance was reasonable, as Plaintiffs and Class Members had every right to believe that defendants would abide by their obligations to pay for all hours worked…").

*Salamon v. Terra*, 477 N.E.2d 1029, 1031 (Mass. 1985).  Similarly, to state a claim for money had and received in assumpsit, plaintiffs must show that that the defendant has money "which should not in justice be retained by the defendant, and which in equity and good conscience should be paid to the plaintiff."  *Cobb v. Library Bureau*, 167 N.E. 765, 767 (Mass. 1929).

Plaintiffs have provided sufficient detail in their complaint to put defendants on fair notice of both of these claims.  For example, plaintiffs allege that defendants "have received financial gain at the expense of Plaintiffs and Class Members" because of defendants failure to pay plaintiffs for all time worked, and that defendants "received that financial gain under such circumstances that in equity and good conscience Defendants ought not to be allowed to profit at the expense of Plaintiffs and Class Members."  *See* Complaint ¶¶ 135, 136.  Further, defendants "failed to act in good faith by failing to pay for all the hours worked including applicable premium pay, which has unjustly enriched defendants to the detriment of Plaintiffs and Class Members."  *See id.* ¶ 138; *see also* ¶ 139.  Plaintiffs clearly alleged the circumstances surrounding their claims for unjust enrichment and money had and received, namely that by failing to pay plaintiffs for all hours worked, defendants retained a financial benefit while plaintiffs suffered damages as a result.  *See id.* ¶¶ 135-140.

Therefore, their claims for unjust enrichment and money had and received meet the pleading standards set forth in *Twombly*.[18]

## H.    Plaintiffs' Claims Against the Individual Defendants are Sufficiently Plead

Plaintiffs have also plausibly suggested that the individual defendants, Elaine Ullian and James Canavan are liable as employers.  Plaintiffs specifically alleged that the individuals committed acts that demonstrate an individual's employer status under Massachusetts state law. *See* Complaint ¶¶ 14-59.  Mass. Gen. Laws ch. 149, § 148 provides that "[t]he president and treasurer of a corporation and any officers or agents having the management of such corporation

---

[18]    In response to defendants' footnote argument that implied contract claim cannot be brought where an express contract exists, plaintiffs allege these claims in the alternative. *See infra,* II.C.

shall be deemed to be the employers of the employees of the corporation within the meaning of this section." *See also Wiedmann v. Bradford Group, Inc.,* 444 Mass. 698, 711 (2005) (finding that "someone who controls, directs, and participates to a substantial degree in formulating and determining policy of a corporation" can be held liable as an employer under the statute).

As an initial matter, Ms. Ullian is liable under the statute as an employer by virtue of her job title – President.  In addition, both Ms. Ullian and Mr. Canavan are liable due to their involvement in "formulating and determining policy" of defendants' day to day business including the violations at issue in this case.

In *Gordon v. Kaleida,* the court held that plaintiffs sufficiently plead that the named individuals had the authority to possibly be held liable as employers.[19]  2008 WL 5114217 at *4. The plaintiffs alleged that the individual defendants had "the authority to make decisions concerning defendants' operations, including functions related to employment human resources, training, payroll, and benefits." *Id.* (internal citations omitted).  The court held that this allegation, coupled with other allegations concerning the individuals' authority, satisfied the notice pleading requirements of Rule 8.  *Id.*

Here, the plaintiffs have plead similar allegations to those plead in *Gordon* to support their claims against Ms. Ullian and Mr. Canavan.  For example, plaintiffs allege, *inter alia*, that Ms. Ullian and Mr. Canavan have the authority to make decisions concerning defendants' operations, including functions related to employment human resources, training, payroll and benefits (Complaint ¶¶ 17, 24, 28, 29, 34, 38, 45, 50, 57); have the authority to make decisions concerning and/or are actively involved in the review and counsel of defendants regarding employment decisions, including the power to hire and fire employees (Complaint ¶¶ 21, 30, 42, 53); have the authority to make decisions concerning and/or actively involved in setting employees' schedules, hours, pay and benefits (Complaint ¶¶ 22, 23, 43, 44); supervise and

---

[19]    The allegations involving individual defendants plead in *Gordon* were similar in nature to the allegations plead in *Tracy v. NVR, Inc.,* relied upon by defendants.  2009 WL 3647862 (W.D.N.Y. 2009).  The allegations in *Gordon* were also plead "upon information and belief."  *See* Civ. No. 08-cv-0378, Docket No. 1.

control employee work schedules and/or conditions of employment (Complaint ¶¶ 31, 54); determine the rate and method of employees' payment (Complaint ¶¶ 32, 55); have the authority to make decisions concerning and/or are actively involved in maintaining defendants' employment and human resources records, including maintaining such records (Complaint ¶¶ 25, 29, 34, 46, 50, 56); and have the authority to make decisions concerning and/or are actively involved in training (Complaint ¶¶ 26, 27, 47, 48).

Further, plaintiffs allege that Ms. Ullian and Mr. Canavan were involved in the creation and enforcement of the illegal policies complained of in this case as well as ensuring defendants' compliance or non-compliance with state law. (Complaint ¶¶ 18-20, 35, 39-41, 58).

Therefore, as the complaint plausibly suggests that the individuals committed these acts, and others, and to the extent Ms. Ullian is also liable by virtue of her position, plaintiffs have stated valid causes of action under the Massachusetts statutory and common laws against the individual defendants as employers. (Complaint ¶¶ 36, 59).

## II.    PLAINTIFFS' STATE LAW CLAIMS ARE NOT PREEMPTED BY FEDERAL LABOR LAW

The United States Supreme Court has been clear that § 301 preemption is a narrow doctrine "that should not be lightly inferred." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 412 (1988) (quoting *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 21 (1987)); *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1070 (9th Cir. 2007) ("After all, the Supreme Court has termed section 301 preemption but an 'acorn,' not a 'mighty oak.'") (citing *Livadas v. Bradshaw*, 512 U.S. 107, 122 (1994)).

Section 301 preemption serves one limited purpose: to allow federal courts to develop their own interpretation of ambiguous contract terms, as opposed to having each state court develop its own method of resolving these ambiguous terms. Thus, "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law … is pre-empted and federal labor-law principles-necessarily uniform throughout the Nation-must be employed to resolve the dispute." *Lingle*, 486 U.S. at 405-06. Therefore, the

only circumstances which require preemption is when interpretation of the CBA is necessary. 29 U.S.C. § 185(a); *see generally Lingle*, 486 U.S. at 403-06; *Lydon v. Boston Sand & Gravel Co.,* 175 F.3d 6, 10-12 (1st Cir. 1999).

Further, preemption is not required even if the court will be referring to and applying the CBA to resolve the state law claim. *See Livadas,* 512 U.S. at 124 (*citing Lingle*, 486 U.S. at 413, n. 12) ("We were clear [in *Lingle*] that when the meaning of contract terms is not the subject of dispute, the bare fact that a collective bargaining agreement will be consulted in the court of state-law litigation plainly does not require the claim to be extinguished."). Therefore, mere referral to or consultation of the CBA is not enough to invoke preemption. *Lydon,* 175 F.3d at 10 (quoting *Lingle,* 486 U.S. at 409-10). Courts must "locate the line between the need for mere consultation of a CBA, which does not demand federal preemption, and more active interpretation of that agreement, which does preempt the state law claims." *Id.*

Additionally, preemption does not arise when the claim asserted derives from the substantive provisions of state law. "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law," rather "it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement, that decides whether a state cause of action may go forward." *Livadas*, 512 U.S. at 123 (internal citations omitted).

Even if resolution of the state law issue involves analysis of the same issues as would be required to determine if there was a violation of the collective bargaining agreement, such "parallelism" does not invoke preemption of the state law. *Lingle,* 486 U.S. at 408. Nor do defenses based on the collective bargaining agreement create preemption. *See Burnside*, 491 F.3d at 1059 ("The [Supreme] Court also has made clear that reliance on the CBA as an aspect of a defense is not enough to 'inject[ ] a federal question into an action that asserts what is plainly a state-law claim.'") (citing *Caterpillar,* 482 U.S. at 398-99). Further, looking to the CBA for information regarding damages, such as rate of pay, does not warrant preemption. *Lingle*, 486

U.S. at 413, n. 12 ("A collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled").

Rather the state law claims must be substantially dependent on the resolution and *interpretation* of terms of a CBA for preemption to apply. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 394 (1987); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); *Lingle,* 486 U.S. at 405-06. The Supreme Court has held that "an application of state law is pre-empted by § 301 of the [LMRA] only if such application *requires the interpretation* of a collective-bargaining agreement." *Lingle,* 486 U.S. at 413 (emphasis added). "As long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Butler v. Verizon New Eng., Inc.,* 861 N.E.2d 794, 799 (Mass.App.Ct. 2007) (quoting *Lingle,* 486 U.S. at 409-410).

Here, plaintiffs' state law claims are exactly those non-negotiable rights provided to individuals in the Commonwealth of Massachusetts to protect their substantive rights. Further, interpretation of the CBA is not required to determine whether defendants failed to provide plaintiffs with all compensation owed pursuant to state statutory and common laws. As a result, plaintiffs' claims are not preempted by the LMRA, and should not be dismissed.

> **A.    Claims Under Massachusetts Payment of Wages Act and Massachusetts Fair Minimum Wage Act Do Not Require the Interpretation of the CBA, and therefore, Are Not Preempt by § 301 of the LMRA**

Thus, in order to meet this preemption standard, the defendants must show that plaintiffs' claims rise or fall based on the terms of the collective bargaining agreement and are not based on the substantive, independent violations of state law.

In a case on all fours with the present action, the Supreme Court has held that state wage payment statutes are not preempted, even when the state wage payment claim is based on the failure to pay wages under the CBA. *See Livadas*, 512 U.S. at 111-13. The Supreme Court unanimously rejected defendants' preemption argument and held that state wage payment

statutes are not preempted by a CBA, and can be used to enforce wages due under a CBA (except in the rare case that there is a genuinely disputed ambiguous terms in the CBA relevant to the claim). *Id.* at 125.

The Supreme Court held that there was not "even a colorable argument that a claim under [a state's general wage payment statute] was pre-empted" in enforcing wages due under the CBA, *Id.* at 124, and that it "is clear beyond peradventure" that preemption cannot displace state wage payment statues. *Id.* at 14 n.18. Held the Supreme Court,

> As the District Court aptly observed, the primary text for deciding whether Livadas was entitled to a penalty was not the Food Store Contract, but a calendar. The only issue raised by Livadas's claim, whether Safeway "willfully fail[ed] to pay" her wages promptly upon severance, Cal.Lab.Code Ann. § 203 (West 1989), was a question of state law, entirely independent of any understanding embodied in the collective-bargaining agreement between the union and the employer. There is no indication that there was a "dispute" in this case over the amount of the penalty to which Livadas would be entitled, and *Lingle* makes plain in so many words that when liability is governed by independent state law, the mere need to "look to" the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301. Beyond the simple need to refer to bargained-for wage rates in computing the penalty, the collective-bargaining agreement is irrelevant to the dispute (if any) between Livadas and Safeway.

*Id.* at 14 (citing *Lingle*, 486 U.S. at 413 n. 12).

Accordingly, courts have followed that state statutes governing wage and hour are not preempted by the LMRA § 301 because generally the statutes are substantive protections that are not influenced by what a collective bargaining agreement provides. *See Self v. United Parcel Serv., Inc.*, 126 N.M. 396, 403 (1998) (unpaid wage claims were not preempted because they were based on non-negotiable state law rights); *Rawson v. Tosco Ref. Co.*, No. 95-3904, 1996 WL 33991 (N.D. Cal. Jan. 24, 1996) (state wage and hour law provisions not preempted by LMRA even though claim involves terms of collective bargaining agreement); *Sellars v. Safeway, Inc.,* No. 05-1013, 2006 WL 2729268 (D. Oregon Sept. 22, 2006) (preemption may not occur when employees are seeking to enforce rights that arise outside of the terms of the CBA).

Here, defendants assert that plaintiffs' claims depend on an interpretation and application

of the CBAs between defendants and the unions representing some of the plaintiffs.  If there were ambiguous terms in the CBA that were relevant to the outcome of this litigation, then § 301 preemption analysis might apply, but given that plaintiffs' claims do not arise out of any CBA and do not require interpretation of any CBA, there can be no preemption.

Moreover, the terms of the CBAs are irrelevant to the plaintiffs' state statutory claims, and the complaint does not, and has no need to, rely on the provisions of any CBA to support any of their state law claims.  All plaintiffs seek is to have their wages paid to them as required under the Massachusetts wage and hour law.  If there was no colorable claim to preempt the wage payment statute in *Livadas*, there is no colorable basis to do so here.

Plaintiffs' state law claims do not require consultation of the CBAs because they are legally premised on the independent legal requirement that an employer pay for all time it suffer or permits an employee to work, including time during working lunches.  These statutory obligations do not rest on the collective bargaining agreement, and are entirely independent of it.

Defendants provide the Court with a convoluted example, in an attempt to prove the necessity of interpretation of the CBA:

> "[T]he Court need only consider the example of a nurse who was on call on a holiday after attending meetings as a union representative the previous day, reported to work in response to a call to work in a different job classification, and continued working through one or more unscheduled shifts, such that the nurse was entitled to daily and weekly overtime under the CBA."

*See* Defendants' Memo in Support at 22.

As plaintiffs will show below, interpretation would not be necessary to determine if this hypothetical nurse, despite the "welter" of circumstances surrounding this one shift, was paid for all hours worked.  Further, because this Court would not need to interpret the CBA in the case of what defendants must believe is their strongest, though unlikely, example, the Court will not need to interpret the CBA for any of the plaintiffs and the case should be remanded.

Defendants contend that interpretation will be necessary to determine liability in their hypothetical due to the mere existence of provisions in the CBA governing pay and time worked.

- 21 -

However, "parallelism" does not invoke preemption of the state law. *Lingle,* 486 U.S. at 408. Therefore, the similarities between the CBA provisions and Massachusetts wage and hour laws do not mandate preemption.

For example, defendants refer to the provisions in the CBA requiring a rest break after an employee has worked a certain number of hours. *See* Defendants' Memo in Support at 20 (internal citations omitted). Additionally, defendants claim that the CBAs **generally** provide that the employees will be paid for work performed during their breaks. *See* Defendants' Memo in Support at 20 (internal citation omitted).

However, defendants fail to mention that Mass. Gen. Laws ch. 149 § 148 mandates that an employer pay an employee "the wages earned by him," within a specified number of days from the end of the pay period. Therefore, any work performed by plaintiffs and class members must be paid to them whether or not the CBA has a specific provision or not – the CBA has absolutely nothing to do with whether employees were properly paid under the statute.

Even so, assuming for a moment that in some instances, pursuant to the provision of the CBA, employees are not paid for certain work performed during scheduled breaks. Defendants would argue that the CBAs would need to be interpreted in order to determine whether the work performed during such breaks is compensable work. However, the CBAs cannot be at odds with state law. *See Livadas*, 512 U.S. at 123 ("§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law") (internal citations omitted). Therefore, the CBAs would not need to be consulted or interpreted because the obligation to pay employees all wages earned is a nonnegotiable right as a matter of state law – it does not matter what the CBA says on the issue.

Turning next to the "welter of CBA provisions" governing the rate at which employees are paid, defendants' argument again fails as a matter of law. It has been well established by the Supreme Court that mere reference or even consultation of the CBA does not mandate preemption. *See Livadas,* 512 U.S. at 124 (*citing Lingle*, 486 U.S. at 413, n.12) ("We were clear

- 22 -

[in *Lingle*] that when the meaning of contract terms is not the subject of dispute, the bare fact that a collective bargaining agreement will be consulted in the court of state-law litigation plainly does not require the claim to be extinguished.").

More importantly, "a collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled" without requiring preemption. *Lingle,* 486 U.S. at 413 n.12 (internal citations omitted).

Take for example, the hypothetical nurse provided by defendants as an example that would require interpretation of multiple provisions of the CBAs. This particular nurse, according to defendants, was on call on a holiday the day after attending meetings as a union representative. *See* Defendants' Memo in Support at 22. She reported to work after receiving a call, but reported to work in a different job classification, and was required to work through one or more scheduled shifts. *Id.* Because of the length of her shift, she was entitled to daily and weekly overtime under the CBA. *Id.*

Defendants, hoping to create enough complication to suggest that interpretation "must" be required, have omitted from their example the only facts actually necessary to determine whether the nurse is owed damages under Massachusetts statutory wage and hour law – the number of hours she worked that shift, and whether she was paid for all those hours. Again, what the CBA says matters not.

Now, consider this version of our hypothetical nurse's day: The day after attending meetings as a union representative, a nurse is on call and it is Christmas Day. Sadly, she receives a call from the hospital asking her to report to work as soon as possible. The nurse arrives at the hospital at 10:15 am and immediately starts working in a different job classification than her normal position. Because she was faced with an emergency as soon as she arrived, she was unable to clock in until 11:00 am. Due to stormy weather and a much anticipated Patriots home game, the hospital has an increase of patients coming in and the nurse is required to work

through two unscheduled shifts. She clocks out to go home at 8:45 pm. She is tired and hungry because despite the length of her shift she was too busy to take a meal break, let alone grab a bite of food. However, due to the hospital's Automatic Meal Break Deduction Policy, the nurse knew she would have a half hour taken from her hours. As she is leaving the hospital, in comes a new emergency and she is paged back to the floor before she has even made it out of her department. There is no time for her to clock back in, so she goes immediately to the emergency. Finally, at 10:30 pm, she gets in her car and is able to return home to her family for the last hour of Christmas Day. Because of the number of hours she worked that day, the nurse was entitled to both daily and weekly overtime.

The only facts that matter in connection with the nurse's wage and hour claim pursuant to Massachusetts statutory law is the information regarding her hours worked and her hours paid, which defendants conveniently left out of their version of the hypothetical. In this example, the nurse was only paid for 9.25 hours of work, even though she worked a total of 12.25 hours. It does not matter at this point what the CBAs say regarding what qualifies as work because Mass. Gen. Laws 149 § 148 requires employers to pay their employees all wages earned. Our hypothetical nurse earned 12.25 hours worth of pay, but was only paid for 9.25 hours. Therefore, the hospital is liable to the nurse for unpaid wages.

Now that liability has been determined, the next question is how much money the nurse is owed. However, this is purely a question of damages, and as discussed earlier, does not result in preemption if the CBAs must be consulted. *See Lingle,* 486 U.S. at 413 n.12. This is also where all of the factors in our hypothetical imposed by defendants come into play. The fact that the nurse: (1) was on call; (2) on a holiday; (3) after attending meetings as a union representative the day before; (4) reported to work in response to a call; (5) to work in a different job classification; (6) and continued to work through one or more unscheduled shifts; (6) such that the nurse was entitled to daily and weekly overtime, only effects the rate of pay to be used to determine the amount owed to the nurse for the 3.0 hours she worked but not was not paid.

In fact, defendants themselves admit that the "welter" of CBA provisions exampled in their hypothetical all govern "the **rate** at which the employees are **paid**." *See* Defendants' Response at 9 (emphasis added). And the rate at which an employee is paid is relevant only to damages, and does not mandate preemption. *See Lingle,* 486 U.S. at 413 n.12. ("A collective-bargaining agreement may, of course, contain information such as **rate of pay** and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.") (emphasis added).

Therefore, defendants have provided the Court with a prime example, albeit absent some key facts, of how the provisions of the CBA will not need to be interpreted, and that preemption is not required.

### B.    Claims for Breach of Contract Do Not Require the Interpretation of the CBA, and therefore, Are Not Preempt by § 301 of the LMRA

Likewise, plaintiffs' common law claims for breach of contract are independent of the CBA, arising solely out of state law, and are not preempted by the LMRA.

The United States Supreme Court has held that "individual employment contracts are not inevitably superseded by any subsequent collective agreement covering an individual employee, and claims based upon them may arise under state law." *Caterpillar, Inc.,* 482 U.S. at 396. "A plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement." *Id.* (citing *Allis-Chalmers, Corp.,* 471 U.S. at 212) (emphasis in original); *see also Allen v. Sara Lee Corp.,* No. 6:06-501, 2007 WL 445363, at *6 (E.D.Ky. Feb. 6, 2007); *Lee v. Tyco Elec. Power Sys., Inc.,* 393 F. Supp. 2d 429, 434 (N.D. Tex. 2005). The Supreme Court held that "Section 301 governs claims found directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement. [Plaintiffs] allege that Caterpillar has entered into and breached *individual* employment contract with them. Section 301 says nothing about the content or validity of individual employment contracts." *Caterpillar,* 482 U.S. at 394-395.

Here, plaintiffs allege in their complaint several theories of breach of contract under Massachusetts common law. *See* Complaint ¶¶ 163-171. However, plaintiffs do not rely on any CBA, either on the face of their complaint or in the theory of their claims. Rather, plaintiffs rely on the individual employment contracts that defendants entered into with each named plaintiff and potential class member upon hire. The individual employment contracts, from which plaintiffs' breach of contract claims arise, were created by the representations and promises made by defendants individually to employees, in order to induce employment. Defendants' representations and promises that they would pay plaintiffs and class members for all time worked constitute individual employment contracts independent of the CBA.

Further, interpretation of any CBA will not be required to litigate plaintiffs' breach of contract claims because those claims simply do not arise from the terms of any CBA. Plaintiffs do not believe that the CBA will even need to be consulted because plaintiffs' claims arise out of completely separate contracts from the CBA, but in the event that the CBA does need to be consulted, removal jurisdiction is still improper. *See Livadas,* 512 U.S. at 124; *Lingle,* 486 U.S. at 413 n. 12; *Lueck*, 471 U.S. at 211; *Lydon,* 175 F.3d at 10. Therefore, defendants' argument that plaintiffs' breach of contract claims are preempted by § 301 of the LMRA fails, and their motion to dismiss should be denied.

Defendants also argue that plaintiffs' contract claims, if based on contracts other than the CBAs, are subject to *Garmon* preemption. *See San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236 (1959) (courts must defer to the NLRB when an activity is subject to § 7 or § 8 of the NLRB). Sections 7 and 8 of the NLRB provide employees the right to bargain collectively, and prohibit employers from refusing to bargain collectively with the representatives of their employees. *See* 29 U.S.C. §§ 157, 158(a)(5). Section 8 further defines "unfair labor practices," and the parameters of collective bargaining. *See* 29 U.S.C. § 158(d); *see generally* 29 U.S.C. § 158.

- 26 -

Despite defendants' reliance on *J.I. Case Co. v. NLRB,* for the proposition that "individual contracts no matter what the circumstances that justify their execution or what their terms, may not be availed of to defeat or delay the procedures prescribed by the [NLRB] looking to collective bargaining," the Supreme Court has held that not all individual contracts are controlled by the NLRB. 321 U.S. 332, 337 (1944); *see Caterpillar,* 482 U.S. at 396.

In *Caterpillar,* the Supreme Court held that *J.I. Case* did "not stand for the proposition that all individual employment contracts are subsumed into, or eliminated by, the collective-bargaining agreement." 482 U.S. at 396. Therefore, employees covered by a CBA are "permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement. *Id* (emphasis in original). In fact, the Court in *J.I. Case* stated that "[w]e cannot except individual contracts generally from the operation of collective ones because some may be more individually advantageous. Individual contracts cannot subtract from collective ones, and whether under some circumstances they may add to them in matters covered by the collective bargain, we leave to be determined by appropriate forums under the laws of contracts applicable…" 321 U.S. at 339.

Here, the individual contracts relied upon by plaintiffs neither add nor subtract from the rights governed under the CBAs. Rather, plaintiffs' individual contracts with defendants provide nothing more than what the laws of Massachusetts provide – that employees are to be paid for all hour worked at the rate agreed upon by the parties, and at premium rates for overtime hours. Therefore, plaintiffs' are those "legal rights *independent*" of the CBAs, and are not subject to *Garmon* preemption. Accordingly, defendants' motion to dismiss based on *Garmon* preemption should be denied.

Therefore, plaintiffs' common law breach of contract claims are not preempted by federal labor law, and defendants' motion to dismiss should be denied.

C.     **Claims for Promissory Estoppel, Assumpsit and Quantum Meruit/Unjust Enrichment Do Not Require Interpretation of the Collective Bargaining Agreement, and therefore Are Not Preempted by § 301 of the LMRA**

Similarly, plaintiffs' implied contract claims for promissory estoppel, assumpsit and quantum meruit/unjust enrichment are not preempted by the LMRA because they do not require interpretation of the CBAs, and arise out of individual employment agreements.

Defendants' argue that because the terms of the CBA will need to be interpreted to determine if there is an express contract between the parties, plaintiffs implied contract claims must be preempted by the LMRA. *See* Memo in Support at 23.

Quasi-contractual remedies are available to plaintiffs as alternative theories of liability in the event no enforceable contract between the parties is found. *Savidge v. TransCanada Power Mktg., Ltd.,* No. 062602, 2007 WL 3014701, at *2 (Mass. Sup. Ct. September 6, 2007) (citing *Meredith & Grew, Inc. v. Worcester Lincoln, LLC,* 64 Mass. App. Ct. 142, 152 (2005)); *see also Viera v. First American Title Ins. Co.,* No. 08-cv-11331, 2009 WL 3432656, at *9 (D. Mass. Oct. 8, 2009) (Woodlock, J.); *Zamzam Telecards, Inc. v. New Jersey's Best Phonecards,* 514 F. Supp.2d 136, 139 (D. Mass. 2007); *see generally* Fed. R. Civ. P. 8(d); *Limone v. U.S.,* 579 F.3d 79, 93 (1st Cir. 2009) ("The plaintiffs had the right to plead alternative theories of liability ... and their exercise of that right did not debar them from an independent review of each set of claims.") (internal citation omitted). Therefore, at this stage in litigation it would be premature to dismiss plaintiffs' unjust enrichment/quantum meruit claims plead in the alternative of their breach of contract claims. *See generally Barrett v. H & R Block, Inc.,* No. 08-10157-RWZ, 2009 WL 2476526, at *5 (D. Mass. February 6, 2009) (refusing to dismiss plaintiffs' alternate theories of liability while recognizing plaintiffs could only recover under one theory); *Savidge,* 2007 WL 3014701, at *2 (refusing to dismiss plaintiffs' unjust enrichment and promissory estoppel claims because they were alternative theories of liability).

Because, as detailed above, plaintiffs' common law breach of contract claims arise out of the individual employment contracts, and not the CBA, interpretation of the CBA will not be needed for the Court to determine if an express contract exists between the parties. Therefore,

plaintiffs' claims for promissory estoppel, assumpsit, and quantum meruit/unjust enrichment are not preempted.

### D.    Claims for Fraud, Misrepresentation and Conversion Do Not Require the Interpretation of the CBA, and therefore Are Not Preempted by § 301 of the LMRA

Lastly, defendants assert that plaintiffs' claims for fraud, misrepresentation and conversion will require the interpretation of the CBA because if defendants "complied with the agreements, then it misrepresented nothing and did not wrongly 'convert' the plaintiffs' wages." *See* Memo in Response at 22.

Plaintiffs agree that this would be true if plaintiffs' claims asserted that the fraud, misrepresentation and conversion were based on the provisions of the CBA.  However, the question is not whether defendants complied with the CBA because plaintiffs did not assert that their claims are based on the terms of the CBA.  Rather, plaintiffs' claims for fraud, misrepresentation and conversion are based on defendants' failure to pay plaintiffs for all work performed and their representations to the contrary.  *See generally Lingle*, 486 U.S. at 407 ("Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer.").  As a result, there will be no need to interpret the CBA for these claims either.

For example, in order to state a cause of action for fraud, plaintiffs must show that "the defendant has knowingly made a false statement of material fact, intending that the plaintiff rely thereon, and upon which the plaintiff did rely."  *Chan,* 872 N.E.2d at 1157 (internal citations omitted).  As stated above, plaintiffs do not allege that the "false statement of material fact" made by defendants was in the form of a provision in the CBA.  Rather, plaintiffs claim for fraud relies on defendants' behavior, motivation and statements that they would pay plaintiffs for all time worked.  *See Wynn v. AC Rochester,* 273 F.3d 153, 156 (2d Cir. 2001) (internal citations omitted); *see also Hernandez v. Conriv Realty Assocs.,* 116 F.3d 35, 40 (2d Cir. 1997); *Trans Penn Wax Corp. v. McCandless,* 50 F.3d 217, 232 (3d Cir. 1994).

Therefore, due to the independent and factual nature of the claims, plaintiffs' claims for fraud, misrepresentation and conversion arise independently of the CBAs and are not preempted.

## III.   DEFENDANTS CANNOT ESTABLISH THAT ANY HOSPITAL EXEMPTION APPLIES TO THIS CASE

Buried deep within their Memo in Support, demonstrating defendants' own view of the strength of this argument, defendants raise an argument concerning a purported exemption under state law.  *See* Memo in Support at 24.

To start, as defendants acknowledge, there have been no reported cases on the so-called hospital exemption under the Wage Act or the Minimum Wage law, making it improper for this Court to resolve the argument.  Indeed, the First Circuit has held that when a particular claim or defense raises novel issues of state law, it is preferable that the issue be resolved by a state court. *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 947 F.2d 529, 534-35 (1st Cir. 1991); *see also Philip Morris Inc. v. Harshbarger,* 946 F. Supp. 1067, 1078-79 (D. Mass. 1996) (abstaining from deciding novel questions of state law in a federal proceeding to allow plaintiffs to pursue those claims in state court); *Conway v. Boston Edison Co.,* 745 F. Supp. 773, 779 (D. Mass. 1990) (refusing to reach novel issues of state law, holding that if they were necessary to the resolution of the case, the court would remand to state court) (citing *Naylor v. Case & McGrath, Inc.,* 585 F.2d 557, 565-66 (2d Cir. 1978)); *Mattingly v. Newport Offshore, Ltd.,* 57 B.R. 797, 800 (D. R.I. 1986) (remanding to state court rather than consider complicated issues of state law) (internal citations omitted).[20]

The present issue before the Court, namely an archaic portion of legislation that has never been invoked, is just the type of "novel or complex" issue of state law that should be left in the hands of the state courts to decide—where this case was originally filed and where it was properly brought as set forth in plaintiffs' motion to remand.  *See* Docket No. 11.  Defendants'

---

[20]     In fact, the federal rules provide further support for the proposition that novel state law issues should be heard in state court.  Under Section 1367, federal district courts may decline to exercise supplemental jurisdiction over claims that raise "novel or complex issues of state law."  28 U.S.C. § 1367(c)(1).

argument, though raised in the present motion, is further support of plaintiffs' argument that their claims are best heard by the Massachusetts Superior Court.[21]

Additionally, in Massachusetts, just as under federal law, an exemption is an affirmative defense which the employer bears the burden to establish. *Somers v. Converged Access, Inc.*, 454 Mass. 582, 591 n.12 (2009) (citing *Goodrow v. Lane Bryant, Inc.*, 432 Mass. 165, 170 (2000)). And a motion to dismiss under Rule 12 is not an appropriate vehicle to raise an affirmative defense. Rule 12 provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading," rather than in a Rule 12 motion. Fed. R. Civ. P. 12(b); *see also* Fed. R. Civ. P. 8(c)(1) (providing that a statute of limitations defenses must be asserted in the answer). There are only seven exceptions to this rule, and a statutory exemption defense is not one of them. *See* Fed. R. Civ. P. 12(b). Accordingly, an affirmative defense is premature on a motion to dismiss and courts will not entertain it unless "the facts establishing the defense [are] *clear 'on the face of the plaintiff's pleadings*.'" *Santana-Castro v. Toledo-Davila*, 579 F.3d 109, 114 (1st Cir. 2009) (emphasis added) (quoting *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 320 (1st Cir. 2008)).

Therefore, plaintiffs respectfully request that the Court remand the entire action to state court, or in the alternative, certify the issue to state court. However, in the event that this Court should consider the issue, which it should not, defendants' motion to dismiss should still be denied.

### A.    Defendants are not Exempt from the Overtime Provisions of the Minimum Wage Act

To avoid their obligation to pay their employees overtime, defendants rely on an obscure, never-invoked provision of Massachusetts law that used to exempt hospitals from state overtime requirements. This exemption, however, is a mere vestigial of a time when both the FLSA and

---

[21]    Notably, defendants failed to raise this argument in their response to plaintiffs' motion to remand this action to state court. Defendants' implicitly recognize the strength of plaintiffs' argument through their omission as they know it dooms their effort to defeat plaintiffs' motion to remand.

Massachusetts state law exempted hospitals from overtime laws. That exemption has long since been abandoned in federal law. Given that the Massachusetts legislature has expressed its intent to follow the substance of federal law, defendants should not be able to invoke it to avoid their obligations under state law either.

Defendants rely solely on Mass Gen. Laws ch. 151, § 1A (16) which purportedly exempts hospitals from the overtime requirements of Massachusetts state wage and hour law. But even defendants acknowledge that this provision—in the more than half a century that it has been on the books—has never even once been invoked by any court to deny overtime protection to any hospital employee.[22] This fact alone raises serious questions about whether this provision continues to hold weight.

The relationship between state and federal wage and hour law answers these questions with a resounding "no." Although the state legislature has chosen to express its will with slightly different semantics than Congress has chosen, it is clear that the intent and purpose of the state overtime provisions is to extend the protections embodied in federal law to employees that are beyond the reach of Congress' commerce power. *See Swift v. AutoZone, Inc.*, 441 Mass. 443, 447, (2004) ("The overtime provision of the minimum wage law . . . was expressly intended to provide comparable overtime compensation 'for all workers not now covered by Federal law.'") (citing 1960 Mass. Senate Doc No. 1, at 22). Or as the Supreme Judicial Court and the First Circuit have both put it, the Massachusetts state law overtime provisions "were intended be 'essentially identical' to Federal law." *Id.* (quoting *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 40 (1st Cir. 1999)). For this reason, the Supreme Judicial Court calls the FLSA "the cognate Federal statute" to Massachusetts Minimum Wage Act, and looks to its provisions to resolve ambiguities in Massachusetts law. *Id.*; *see also O'Donnell v. Robert Half Int'l, Inc.*, 534 F.

---

[22]    Implicitly acknowledging that employees may bring claims against hospitals for unpaid wages and overtime, the Massachusetts Attorney General has issued "right to sue letters" to employees of hospitals, indicating that they may bring a private suit pursuant to Mass. Gen. Laws ch. 151, § 1B. *See* Newman Aff., <u>Exhibits</u> B, Attorney General Issued Right to Sue Letter for Named Plaintiffs in this Action.

Supp. 2d 173, 183 n.3 (D. Mass. 2008) ("Massachusetts law mirrors federal law with respect to the definitions of exempt employees and the overtime pay provisions.").

In *Swift v. AutoZone*, for example, the Supreme Judicial Court considered the question of whether crediting for overtime pay for Sunday work towards the total overtime due to employees was permitted under state law. 441 Mass. at 447-450. There was no provision permitting such crediting in the FLSA as originally enacted in 1938, and similarly, there was no such provision in the Massachusetts Minimum Wage Act, as enacted in 1947. *Id.* In 1949, Congress amended the FLSA to permit crediting, *see* 29 U.S.C. § 207(e)(6), (h), and Massachusetts passed a similar amendment in 2003. *Id.* The Supreme Judicial Court concluded, however, because of the purpose of Massachusetts wage and hour law, that even before the 2003 amendment, state law followed federal law. *Id.*

By the same logic, an exemption for hospitals, which federal law has long since discarded, no longer continues to be valid under state law. Before 1966, hospital employees were not originally covered by the FLSA. *See Cent. Aguirre Sugar Co. v. Castro*, 330 F.2d 68, 70-71 (1st Cir. 1964) (holding that hospital employees were not "engaged in commerce" under the FLSA). Similarly, the Massachusetts overtime statute, passed in 1960, made hospitals exempt from overtime. *See Swift v. AutoZone*, 441 Mass. at 448 (overtime compensation statute passed in 1960). In 1966, however, Congress amended the FLSA to ensure that it covered hospital employees. It did so in two ways: first, by removing the exemption for employees of public hospitals, *see Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 533 (1985) ("Congress extended FLSA coverage . . . by withdrawing the minimum wage and overtime exemptions from . . . public hospital[s]."), and second, by extending the definition of an "enterprise engaged in commerce" to specifically include hospitals, *see Maryland v. Wirtz*, 392 U.S. 183, 186 (1968) (overruled on other grounds) (describing the enactment of the 1966 amendments).

And just as under federal law, it is not enough for the employer to prove that it falls under

the literal words of the statute; rather the employer must prove that it in fact falls within the spirit of the legislature's intent. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960) (holding that FLSA exemptions must be "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit."); *see also Calaf v. Gonzalez,* 127 F.2d 934, 937 (1st Cir. 1942); *cf Sturdy Mem. Found., Inc. v. Bd. of Assessors*, 804 N.E.2d 368, 375-77 (Mass. App. Ct. 2004) (holding that to claim a tax exemption for charities, a hospital must prove not only that it is organized as a charity, but also that it operates as a charity). Since 1966, the overtime requirements of federal law have applied to hospital employees. And because Massachusetts overtime law is designed to follow federal law and to extend the provisions of federal law to those employees beyond the reach of the FLSA, it is no surprise that no court has ever relied on the vestigial hospital exemption to deny employees overtime pay under Massachusetts overtime law. In light of this history, and to the surprise of tens of thousands of health care employees, defendants cannot carry their burden to show that the legislature intended to deny overtime pay to their employees.

### B.    Defendants are not Exempt from the Wage Payment Act

Defendants also rely on a provision of the Wage Payment Act that makes certain hospitals exempt from the wage payment law as a basis for exemption.

Again, a motion to dismiss is not the proper vehicle to raise affirmative defenses. Further, defendants cannot raise this exemption as a defense because the facts establishing the defense are not clear on the face of the complaint. This defense can apply only if the hospital "is supported in part by contributions from the commonwealth … provides treatment to patients free of charge … [or] … is conducted as a public charity." Mass. Gen. Laws ch. 148, § 149. None of these facts are clearly established on the face of the complaint. Moreover, even when these prerequisites are met, the defense still does not apply if the "employee requests such hospital to pay him weekly." *Id.* Defendants have not shown that employees did not make such requests. Therefore defendants fail to establish that the elements of the defense are established on the face

of the complaint.  To the extent that Defendants argue that these elements *are* met, they are merely making factual arguments that are premature at this point and do nothing to carry their burden on a motion to dismiss.

Therefore, defendants' arguments concerning exceptions under state law are due to be dismissed.

## IV.    PLAINTIFFS' COMMON LAW CLAIMS ARE NOT PREEMPTED BY THE MASSACHUSETTS WAGE ACT AND MINIMUM WAGE LAW

Defendants' argue that plaintiffs' common law claims are preempted by the Massachusetts Wage Act and Massachusetts Minimum Wage Law, and should therefore be dismissed.

However, "[i]t is well established that 'an existing common law remedy is not to be taken away by statute unless by direct enactment or necessary implication.'"  *Eyssi v. City of Lawrence,* 416 Mass. 194, 199-200 (1993) (quoting *Ferriter v. Daniel O'Connell's Sons,* 381 Mass. 507, 521 (1980)).  Further, "'[a] statute is not to be interpreted as effecting a material change in or a repeal of the common law unless the intent to do so is **clearly expressed**.'"  *Id.* (quoting *Riley v. Davison Constr. Co.,* 381 Mass. 432, 438 (1980)) (emphasis added).  Additionally, "[t]he mere fact that the statute provides for enforcement by the Attorney General and establishes a private cause of action for aggrieved employees does not indicate that the Massachusetts legislature intended it to have a preclusive effect on common law claims."  *Tomei v. Corix Utils (U.S.) Inc.,* No. 07-cv-11928-DPW, 2009 WL 2982775, at *19 (D. Mass. Sept. 14, 2009) (Woodlock, J.).

In fact, in *Spears v. Miller*, the court held that "this Division is not inclined to read G.L. c. 151, § 1A and 1B as preempting all common law claims for unpaid overtime wages without a clear mandate from the Legislature to do so."  No. 1683, 2006 WL 2808145, at *2 (Mass. App. Div. Sep. 26, 2006).  In so holding, the court stated that "when our Legislature intends to make a statutory remedy exclusive, it has done so by explicit language.  Such language is conspicuously absent from G.L. c. 151, §§ 1A and 1B."  *Id.* (footnote omitted) (citing *Lowry v. Klemm,* 446

Mass. 572, 579-580 (2006) (exclusivity provisions of G.L. c. 151B, § 9 and c. 214, § 1C prohibit plaintiffs from framing sexual harassment as violation of other statutes or as common law claim); *King v. Driscoll,* 418 Mass. 576, 584 n. 7 (1994) (G.L. c. 151, § 9(1) provides that statutory redress for employment termination in violation of public policy is exclusive)).

Further, in *Tomei,* this Court held that Mass. Gen. Laws ch. 149, § 27 and ch. 151, § 1A did not preclude plaintiff from bringing claim under common law. 2009 WL 2982775, at *19 (noting that there were no "Massachusetts cases which confront the issue of preclusion for the prevailing wage statute" and that the Massachusetts overtime wage statute "does *not* preclude a plaintiff from bringing common law claims for failure to pay overtime") (citing *Spears,* 2006 WL 2808145, at *2) (emphasis in original)).

Here, like in *Spears* and *Tomei,* the plaintiffs have alleged claims under Mass. Gen. Laws ch. 151, § 1A and different theories of common law.[23] As this court has already recognized, Mass. Gen. Laws ch. 151, § 1A does not preclude remedies under common law.

In support of their argument, defendants rely on numerous Massachusetts Superior Court decisions on motions for summary judgment, the majority of which are dealing with claims brought under the Massachusetts Tip Statute.[24] *See* Defendants' Memo in Support at 26. Not only are these cases dealing with a different statutory provision, they are at odds with the case law holding that the overtime wage statute does not preclude a plaintiffs' common law claims.

Therefore, plaintiffs' common law claims are not preempted by the Massachusetts Wage

---

[23]    Like Mass. Gen. Laws. ch. 151, § 1A, ch. 149 § 148 references the same section (ch. 149, § 27C) for remedies.

[24]    Additionally, Federal Rule of Civil Procedure 8(e)(2) 'allows parties to take inconsistent positions in their pleadings, especially at the early stages of litigation, and as such, a party's pleading will not be treated as an admission precluding another, inconsistent, pleading." *Rodriguez-Suris v. Montesinos,* 123 F.3d 10, 20 (1st Cir. 1997); *see also Gens v. Resolution Trust Corp.,* 112 F.3d 569, 573 (1st Cir. 1997); *Aetna Cas. Sur. Co. v. P & B Autobody,* 43 F.3d 1546, 1555 (1st Cir. 1994); *Barrett v. H & R Block, Inc.,* Civ. No. 08-10157-RWZ, 2009 WL 2476526, at *5 (D. Mass Feb. 6, 2009) ("Rule 8 permits plaintiffs to please alternative theories"). Therefore, it would be improper to dismiss plaintiffs' state common law claims prior to discovery.

Act and Minimum Wage Law.[25]

## V.    EQUITABLE ESTOPPEL IS AN INDEPENDENT CAUSE OF ACTION

Defendants argue that plaintiffs' claims for equitable estoppel fail because they are not independent causes of action.

However, "equitable estoppel, while characterized by [defendant] as an equitable bar to the invocation of the Statute of Frauds as a defense to a contract claim, is not that at all; it states a separate and distinct cause of action of reliance." *M.H. Promotion Group, Inc. v. Cincinnati Milacron Inc.,* No. 96-0832C, 1998 WL 52239, at *6 (Mass. Super. Jan. 28, 1998).

The "essential elements of equitable estoppel are (1) a representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made; (2) an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made; and (3) detriment to the reliant person as a consequence of the act or omission[]." *Renovator's Supply, Inc. v. Sovereign Bank,* 892 N.E.2d 777, 785 (Mass. App. Ct. 2008) (affirming Superior Court's judgment holding defendant liable to plaintiff under the principle of equitable estoppel) (internal

---

[25]    Addressing footnote 49 in Defendant's Memo in Support, courts have also commonly held that common law claims can be brought alongside FLSA claims. *See* Defendants' Memo in Support at 27. At least two Circuit Court of Appeals opinions hold that state common law claims are not preempted by FLSA claims. *See Williamson v. General Dynamics Corp.*, 208 F.3d 1144 (9th Cir. 2000) (holding that fraud claims are not preempted based upon the FLSA's savings clause which indicates that the FLSA does not provide an exclusive remedy); *see also Freeman v. City of Mobile, Ala.*, 146 F.3d 1292, 1298 (11th Cir. 1998) ("[T]he FLSA does not preempt state law contract provisions that are more generous than the FLSA demands"). Moreover, there are numerous district court decisions which likewise hold that state common law claims are not preempted by FLSA claims. *See Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F. Supp.2d 551 (D. Md. 2003) (holding that plaintiff's negligence claims were not preempted by the FLSA despite the fact they were based on same set of facts because the FLSA does not explicitly preempt tort claims, FLSA contemplated coextensive FLSA and state law coverage, and negligence claims do not conflict with FLSA's remedial scheme); *see also Washington v. Fred's Stores of Tennessee*, 427 F. Supp.2d 725 (S.D. Miss. 2006) (holding that plaintiff's negligence and conversion claims were not preempted by the FLSA based upon analysis of the preemption framework of express, implied and conflict preemption).

citations and emphasis omitted).

In FLSA cases, courts have held that employers are estopped from asserting a statute of limitations defense if the employee reasonably relied on their employer's representations that they would be properly compensated. *See Long v. Idaho Rural Water Assoc., Inc.*, No. CV 05-303-S-EJL, 2007 WL 1366534, at *10 (D. Idaho Mar. 29, 2007) (employer orally promised to fully compensate employee at a later date and was therefore estopped from asserting defense of statute of limitations); *Prange v. Borders, Inc.*, No. 05-2194, 2006 WL 2632013, at *4 (N.D. Ill. Sept. 11, 2006) (employer estopped from asserting statute of limitations defense after assuring employee that she would be paid for off-the-clock hours).

Plaintiffs' complaint establishes that, through defendants' conduct and concealment of facts, plaintiffs were induced to believe they were being properly paid for all time worked.[26] These representations made by defendants are similar to those made in *Prange*, where the employer had assured employee that they would be properly compensated for all off-the-clock hours. 2006 WL 2632013, at *4. Also in *Long*, the employer had promised an employee that they would be properly compensated at a later date. 2007 WL 1366534, at *10. In each of these cases, the misrepresentations made were sufficient to invoke the doctrine of estoppel.

As a result of these inducements, plaintiffs relied to their detriment through continued employment without knowledge of the amount of wages to which they were entitled, and without knowledge of their status and rights under the FLSA. *See* Complaint ¶ 154 ("Defendants concealed the fact that they did not pay Plaintiffs and Class Members for all compensable time

---

[26]    *See* Complaint ¶¶ 143 ("Through the paystubs and payroll information it provided to employees, BMC deliberately concealed from its employees that they did not receive compensation for all compensable time and misled them into believing they were being paid properly."); ¶ 145 ("Further, in the course of their business, by maintaining and propagating the illegal policies, defendants deliberately misrepresented to Plaintiffs and Class Members that they were being properly paid for compensable time, even though Plaintiffs were not receiving pay for all compensable time."); ¶ 141 ("The defendants engaged in such conduct and made statements to conceal from the Plaintiffs their rights and to frustrate the vindication of the employees' rights under Massachusetts law."); ¶ 142 ("As a result, employees were unaware of their claims.").

from Plaintiffs and Class Members.  Plaintiffs and Class Members relied upon defendants' representations by performing work and services for defendants.  This reliance was reasonable, as Plaintiffs and Class Members had every right to believe that defendants would abide by their obligations to pay for all hours worked pursuant to the Mass. Gen. Law Ch. 149 §§ 148, 150 and Mass. Gen. Law Ch. 151 §§ 1A, 1B and common law."); *see also Long*, 2007 WL 1366534, at *10; *Prange*, 2006 WL 2632013, at *4.

Because plaintiffs reasonably relied on these misrepresentations, they were unaware of available remedies under Massachusetts statutory and common laws, and therefore, plaintiffs' equitable estoppel claims should not be dismissed.

### CONCLUSION

Because defendants have failed to meet their burden of proving the facts necessary to support dismissal of plaintiffs' claims, plaintiffs respectfully request that defendants' motion to dismiss be denied.

Dated: December 18, 2009                Respectfully submitted,
                                        ELIZABETH MANNING, et al.

                                        By their attorneys,

                                        *Jody L. Newman*
                                        Jody L. Newman (BBO No. 542264)
                                        Ariatna Villegas-Vazquez (BBO No. 655249)
                                        DWYER & COLLORA, LLP
                                        600 Atlantic Avenue
                                        Boston, MA  02210-2211
                                        (617) 371-1000
                                        jnewman@dwyercollora.com
                                        avillegas-vazquez@dwyercollora.com

### CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: December 18 2009                 *Jody L. Newman*